2013 ND 151

In the Matter of the Application for DISCIPLINARY ACTION AGAINST Ervin J. LEE, a Member of the Bar of the State of North Dakota.

Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner

v.

Ervin J. Lee, Respondent.

No. 20130017.

Supreme Court of North Dakota.

Aug. 29, 2013.

Paul W. Jacobson, Bismarck, N.D., for petitioner.

Ronald H. McLean (argued) and Ian McLean (appeared), Fargo, N.D., for respondent.

PER CURIAM.

[¶ 1] Disciplinary Counsel objected to a report of a hearing panel of the Disciplinary Board that concluded Ervin Lee had violated N.D.R. Prof. Conduct 1.5(b) and (c) and 1.15(a), (d), and (e), and that recommended Lee be suspended from the practice of law for 60 days and pay the costs of the disciplinary proceeding in the amount of $7,147.51. We conclude there is clear and convincing evidence Lee violated N.D.R. Prof. Conduct 1.5(b) and (c) and 1.15(a), (d), and (e), but there is not clear and convincing evidence Lee violated N.D.R. Prof. Conduct 1.5(a) or N.D.R. Lawyer Discipl. 1.2A(2) or (3). We order Lee be suspended from the practice of law for 60 days and pay the costs of the disciplinary proceeding in the amount of $7,147.51.

I

[¶ 2] In 2008, Wilbur Wilkinson hired Lee to represent him in litigation arising

from Wilkinson's involvement in oil and gas ventures. Wilkinson and Lee were acquaintances and had worked together in the past. The parties agreed to a 10 percent contingent fee, but the fee agreement was not reduced to writing.

[¶ 3] The litigation was complex, involving numerous parties and multiple actions in federal, state, and tribal courts in Texas and North Dakota. A final judgment had been entered against Wilkinson in Texas for more than $1.4 million. In addition, Wilkinson had entered into a 50 percent contingent fee agreement with his prior attorney, and attorney's liens had been filed. Lee represented Wilkinson for more than two years, and estimated he spent between 800 and 1,000 hours on the case.

[¶ 4] The numerous parties to the oil and gas litigation eventually entered into a global settlement of all disputes. As part of the settlement, Lee secured agreements that the $1.4 million Texas judgment against Wilkinson would not be enforced; Wilkinson would receive a bonus payment of $140,000; Wilkinson would receive .5 percent of an overriding royalty interest on production from certain oil and gas wells; and Wilkinson's prior attorney would waive his 50 percent contingent fee and release the attorney's liens. The final settlement agreement expressly provided that 10 percent of the $140,000 bonus payment would be paid directly to Lee and that 10 percent of Wilkinson's share of the overriding royalty interest would be assigned to Lee.

[¶ 5] Lee received a wire transfer of the $140,000 settlement payment into his trust account. He immediately withdrew $14,000 by check. He began withdrawing additional amounts from the settlement balance, and eventually withdrew the full $140,000. The parties dispute whether Lee told Wilkinson he had received the settlement payment, and Lee claims Wilkinson expressly agreed to let him keep the entire $140,000 as payment toward his fee.

[¶ 6] After a dispute arose over Lee's handling of the settlement proceeds, Lee provided a written calculation of the fees to which he claimed he was entitled. Lee claimed the parties had agreed Lee would be entitled to 10 percent of any monetary benefit Wilkinson received from the representation, and Lee included the value of the $1.4 million judgment against Wilkinson, which was effectively voided by the settlement agreement, as a monetary benefit when calculating his contingent fee. Lee thus claimed his contingent fee and expenses totaled more than $160,000, and allowed him to retain the entire $140,000 settlement payment toward satisfaction of the fees owed by Wilkinson.

[¶ 7] Wilkinson subsequently filed a disciplinary complaint against Lee. Disciplinary Counsel filed a petition for discipline alleging Lee had violated N.D.R. Prof. Conduct 1.5(a) and (b) (charging an unreasonable fee and failing to communicate to the client the basis, rate, or amount of the fee); N.D.R. Prof. Conduct 1.5(c) (failing to put a contingent fee agreement in writing); N.D.R. Prof. Conduct 1.15(a), (d), and (e) (failure to hold property of a client separate from the lawyer's property, failure to notify the client of funds received, and failure to keep disputed property separate); N.D.R. Prof. Conduct 8.4(b) and N.D.R. Lawyer Discipl. 1.2A(2) (committing a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer); and N.D.R. Prof. Conduct 8.4(c) and N.D.R. Lawyer Discipl. 1.2A(3) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). The hearing panel found that Lee had violated N.D.R. Prof. Conduct 1.5(b) and (c) and 1.15(a), (d), and

(e), by failing to properly communicate with the client, failing to put the contingent fee agreement in writing, and failing to provide notice of receipt and safekeeping of the client's property. The hearing panel found Lee had not charged an unreasonable fee or engaged in a criminal act or in conduct involving dishonesty, fraud, deceit, or misrepresentation, and therefore had not violated N.D.R. Prof. Conduct 1.5(a), 8.4(b), or 8.4(c), or N.D.R. Lawyer Discipl. 1.2A(2) or (3). The hearing panel recommended Lee be suspended from the practice of law for 60 days and be ordered to pay the costs of the disciplinary proceeding in the amount of $7,147.51.

[¶ 8] Under N.D.R. Lawyer Discipl. 3.1F(2), Disciplinary Counsel has objected to the report of the hearing panel, alleging the fee charged by Lee was unreasonable, the record established that Lee committed a criminal act and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, and the appropriate sanction was disbarment or a long period of suspension.

## II

■ [¶ 9] We have summarized our standard of review in disciplinary proceedings:

This Court reviews disciplinary proceedings de novo on the record. Disciplinary counsel must prove each alleged violation by clear and convincing evidence, which means the trier of fact must be reasonably satisfied with the facts the evidence tends to prove and thus be led to a firm belief or conviction. The evidence need not be undisputed to be clear and convincing. We give due weight to the findings, conclusions, and recommendations of the Disciplinary Board, but we do not act as a mere rubber stamp for the Board. To decide which sanction, if any, is appropriate, each disciplinary matter must be considered on its own facts.

Because the hearing panel has the opportunity to hear witnesses and observe their demeanor, we accord special deference to the panel's findings on matters of conflicting evidence. Similarly, we defer to the hearing panel's findings on the credibility of a witness, because the hearing panel has the opportunity to observe the witness's demeanor and hear the witness testify.

*Disciplinary Board v. Stensland*, 2011 ND 110, ¶ 10, 799 N.W.2d 341 (quoting *Disciplinary Board v. Askew*, 2010 ND 7, ¶¶ 8–9, 776 N.W.2d 816).

## III

■ [¶ 10] The hearing panel found that Lee's failure to put the contingent fee agreement in writing, his failure to immediately notify Wilkinson of receipt of the $140,000 settlement proceeds, and his handling of the settlement proceeds after they were received violated N.D.R. Prof. Conduct 1.5(b) and (c) and 1.15(a), (d), and (e). The parties have not objected to or otherwise challenged these findings of fact and conclusions of law of the hearing panel. We have reviewed the record and find that Lee's conduct violated N.D.R. Prof. Conduct 1.5(b) and (c) and 1.15(a), (d), and (e).

## IV

■ [¶ 11] Disciplinary Counsel contends Lee charged an unreasonable fee in violation of N.D.R. Prof. Conduct 1.5(a), which provides:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particu-

lar employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[¶ 12] Disciplinary Counsel does not rely upon any of the eight factors enumerated in Rule 1.5(a) to support his allegation that Lee charged an unreasonable fee in this case. There is no claim that the $160,000 contingent fee claimed by Lee was unreasonable or excessive based upon the time and skill involved, the fee customarily charged by lawyers in the locality, the results obtained, or the fact the fee was contingent. Rather, Disciplinary Counsel contends "the fee that Lee actually collected (from the money received) was unreasonable because it was more than agreed to by Lee and Wilkinson."

[¶ 13] Disciplinary Counsel's argument is premised upon the contention that the agreed upon 10 percent contingent fee applied only to the $140,000 settlement payment and the overriding royalty, and Lee therefore was entitled to keep only $14,000 of the $140,000 settlement payment. Thus, the factual dispute between the parties centered upon whether Lee was entitled to a 10 percent contingent fee, totaling more than $140,000, for successfully negotiating an agreement which effectively relieved Wilkinson from liability for the $1.4 million Texas judgment.

[¶ 14] This case presents a classic example of a contractual fee dispute between attorney and client. The parties agree they entered into a 10 percent contingent fee agreement, but subsequent developments have created a legitimate dispute over what the 10 percent was intended to cover. Lee contends the parties had agreed the 10 percent applied to all "monetary benefit" which Wilkinson received due to Lee's representation, which Lee interprets to include the monetary benefit Wilkinson received by being relieved of liability on the $1.4 million judgment. Wilkinson and Disciplinary Counsel contend the 10 percent contingent fee only applied to those items expressly recognized in the underlying settlement agreement, *i.e.* the $140,000 bonus payment and the overriding royalty interest, and Lee's retention of more than $14,000 from the $140,000 settlement payment constituted charging an unreasonable fee under Rule 1.5(a).

[¶ 15] The purpose of the prohibition in Rule 1.5(a) against charging an unreasonable fee is to protect clients and the public from excessive fees which exceed the bounds of reasonableness in light of the amount and quality of the work performed, the results obtained, and the fees customarily charged in the locality for similar legal services. The rule was not intended to be used to resolve routine contractual fee disputes between an attorney and client. When there is a legitimate, good faith dispute between an attorney and client over the agreed-upon fee to be charged, there are other avenues that may be better suited than disciplinary proceedings to resolve the civil contractual dispute between the parties. *See* N.D.R. Prof. Conduct 1.5, Comment 9 (suggesting submission to arbitration when there is a fee dispute).[1] The disciplinary process is

---

1. The record indicates Wilkinson has sued      Lee in tribal court seeking return of the full

reserved for those situations where an attorney has charged an excessive fee beyond the scope of reasonableness in light of the usual and customary fees charged in the locality by similar attorneys for similar work. An attorney is not automatically subject to discipline under Rule 1.5(a) whenever a client claims the fee charged was more than what was agreed to.

[¶ 16] Disciplinary Counsel cites three cases to support his assertion that an attorney violates Rule 1.5(a) as a matter of law if he charges "more than what it was agreed he was entitled to take." Those cases, however, are distinguishable, and do not support the general proposition that an attorney who is ultimately found to have charged more than the agreed amount has automatically violated the rule and charged an unreasonable fee. For example, in *Disciplinary Board v. Dvorak*, 1998 ND 134, 580 N.W.2d 586, the attorney was disciplined in part for collecting fees for work performed on a bankruptcy in excess of the amount of fees determined and allowed by the bankruptcy court. In that instance, the collection of the fees was in violation of the bankruptcy court's order and thus could be considered collection of an unreasonable fee. *See id.* at ¶ 21. In *Disciplinary Board v. Moe*, 1999 ND 110, 594 N.W.2d 317, the attorney was disciplined in part for billing the injured worker directly for fees in violation of the standard attorney agreement with the Worker's Compensation Bureau. The attorney in that case had signed the Bureau's standard notice of legal representation, under which he agreed to accept payment from the Bureau and to charge no other fees to the claimant. The court concluded the attorney's attempt to bill the client for fees in violation of the standard attorney agreement constituted an unreasonable fee under Rule 1.5(a). *Moe*, at ¶ 16; *see also* N.D.C.C. § 65–02–08 (claimant's attorney may not seek fees from both the Bureau and the claimant).

[¶ 17] Finally, Disciplinary Counsel cites *Disciplinary Board v. Delorme*, 2011 ND 40, 795 N.W.2d 293, in which the hearing panel found the attorney had orally agreed to an hourly rate of $125, but instead charged $175 to $210 per hour. *Id.* at ¶ 4. The attorney did not object to the hearing panel's findings of fact or its conclusion she had charged an unreasonable fee. Furthermore, the difference between the agreed-to hourly rate and the amount actually charged was hardly the sole basis for the hearing panel's conclusion that the fee was unreasonable. In addition, the attorney had billed for time when she had provided no legal services, had billed for more than 24 hours per day, had billed for work she had not done, had overbilled for mileage, and had failed to credit the claimant for payments made. *Id. Delorme* does not stand for the broad proposition that an attorney who is ultimately found to have charged more than an agreed-upon fee has, as a matter of law, charged an unreasonable fee in violation of Rule 1.5(a).

[¶ 18] Disciplinary Counsel also suggests Lee was only allowed to receive $14,000 from the $140,000 settlement payment because the underlying settlement agreement in the oil and gas litigation expressly noted "ten percent (10%) of the [$140,000] shall be paid directly to Ervin J. Lee." Although the settlement agreement recognized Lee's right to retain 10 percent of the $140,000, and noted that his 10 percent was to be paid directly to him, the agreement did not purport to set out the full and complete fee agreement between Lee and Wilkinson. Furthermore, Lee

---

$140,000 plus interest and attorney fees. That action was pending at the time of the

disciplinary hearing, and the tribal court had ordered mediation.

was not a party to the settlement agreement, which settled the disputes between Wilkinson and various other parties involved in certain oil and gas ventures. That agreement does not constitute the fee agreement between Lee and Wilkinson, and did not prohibit Lee from attempting to enforce the parties' oral fee agreement.

[¶ 19]   There is no evidence that the fee charged by Lee was unreasonable or excessive in light of the eight factors enumerated in Rule 1.5(a). Furthermore, the evidence demonstrates there was a legitimate dispute between the parties whether the contingent fee applied to the value of the $1.4 million judgment, and Lee in good faith believed he was entitled to a total contingent fee in excess of $160,000 and entitled to apply the full $140,000 settlement proceeds in payment of his fee. We conclude Disciplinary Counsel has failed to prove by clear and convincing evidence that Lee charged an unreasonable fee in violation of N.D.R. Prof. Conduct 1.5(a).

### V

[¶ 20]   Disciplinary Counsel contends Lee's conduct violated N.D.R. Lawyer Discipl. 1.2A(2) (committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer) and N.D.R. Lawyer Discipl. 1.2A(3) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Disciplinary Counsel argues Lee's failure to pay $126,000 of the $140,000 settlement proceeds to Wilkinson and Lee's use of that money for his personal needs constituted dishonesty, fraud, deceit, and misrepresentation and constituted a criminal violation of N.D.C.C. § 12.1–23–07 (misapplication of entrusted property).

[¶ 21]   Disciplinary Counsel's argument is premised upon the assertion that it was "clear" Lee was only entitled to retain $14,000 of the $140,000 payment, and that Lee "knowingly" used the money for his personal use despite a clear obligation to pay $126,000 to Wilkinson. In effect, Disciplinary Counsel's contention is again based upon the assertion that Lee intentionally violated the fee agreement and knowingly charged more than he was entitled to charge. As previously noted, however, there was a legitimate, good faith dispute between the parties whether Lee was entitled to retain the additional $126,000 as payment toward fees owed to him under the parties' contingent fee agreement. The hearing panel found that Lee's testimony regarding the reasonableness of the fee was more credible than Wilkinson's testimony, and accordingly found no evidence of dishonesty, fraud, deceit, misrepresentation, or a criminal violation. We generally defer to the hearing panel's findings on matters of conflicting evidence, particularly matters based upon the credibility of the witnesses. *See Stensland*, 2011 ND 110, ¶ 10, 799 N.W.2d 341.

[¶ 22]   The record in this case demonstrates a legitimate, good faith fee dispute between the parties, and there is not clear and convincing evidence that Lee's conduct involved dishonesty, fraud, deceit, misrepresentation, or a violation of N.D.C.C. § 12.1–23–07. We therefore conclude Lee's conduct did not violate N.D.R. Lawyer Discipl. 1.2A(2) or (3).

### VI

[¶ 23]   Disciplinary Counsel contends that Lee's conduct warrants disbarment or a long suspension.

[¶ 24]   Much of Disciplinary Counsel's argument on this issue is premised upon the underlying assertions that Lee charged an unreasonable fee and that his conduct involved dishonesty, fraud, deceit, misrepresentation, and criminal conduct, in violation of N.D.R. Prof. Conduct 1.5(a) and N.D.R. Lawyer Discipl. 1.2A(2) and (3). We have rejected those arguments

and have found Lee's conduct violated only N.D.R. Prof. Conduct 1.5(b) and (c) and 1.15(a), (d), and (e).

[¶ 25] Lee's wrongful conduct, including failure to put the contingent fee in writing, failure to promptly notify Wilkinson of receipt of the settlement funds, and improper handling of the settlement funds, implicates N.D. Stds. Imposing Lawyer Sanctions 4.12 and 6.22:

> 4.12 Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.
>
> . . . .
>
> 6.22 Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

In assessing the appropriate discipline in this case, we have also considered aggravating and mitigating circumstances under N.D. Stds. Imposing Lawyer Sanctions 9.0: in aggravation, Lee has a similar prior disciplinary offense; in mitigation, Lee presented evidence establishing his good character and reputation in the profession. *See* N.D. Stds. Imposing Lawyer Sanctions 9.22(a) and 9.32(g).

[¶ 26] After consideration of Lee's conduct in light of these guiding factors, we adopt the recommendation of the hearing panel and order that Lee be suspended from the practice of law for 60 days and that he pay the costs of the disciplinary proceeding in the amount of $7,147.51.

### VII

[¶ 27] We order that Lee be suspended from the practice of law for 60 days, effective October 1, 2013, and that he pay the costs of the disciplinary proceeding in the amount of $7,147.51 within 60 days of the judgment, payable to the Secretary of the Disciplinary Board.

[¶ 28] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

CROTHERS, Justice, concurring specially.

[¶ 29] I agree with the Court's ultimate disposition of this matter but write separately on a legal concern neither raised by the parties nor resolved by the majority.

[¶ 30] Our authority in lawyer disciplinary matters is broad:

> "We generally prefer the full benefit of the adversarial process before deciding a matter. However, even without arguments and objections from the parties, we are obliged to correctly interpret and apply the law and 'our duty is especially important in lawyer disciplinary cases where we adjudicate in the first instance rather than act as an appellate tribunal.'"

*Disciplinary Bd. v. McDonagh,* 2013 ND 20, ¶ 8, 826 N.W.2d 622 (quoting *Disciplinary Bd. v. Wolff,* 2010 ND 175, ¶ 28, 788 N.W.2d 594 (Crothers, J., specially concurring)).

[¶ 31] The majority states:

> "The hearing panel found that Lee's failure to put the contingent fee agreement in writing, his failure to immediately notify Wilkinson of receipt of the $140,000 settlement proceeds, and his handling of the settlement proceeds after they were received violated N.D.R. Prof. Conduct 1.5(b) and (c) and 1.15(a), (d), and (e). The parties have not objected to or otherwise challenged these findings of fact and conclusions of law of the hearing panel. We have reviewed the record and find that Lee's conduct

violated N.D.R. Prof. Conduct 1.5(b) and (c) and 1.15(a), (d), and (e)."

Majority opinion at ¶ 10.

[¶ 32] The Hearing Panel found violations of Rules 1.15(a) and 1.15(e) based on Lee's removal of money from the trust account when ownership of most of the money was in dispute. Regarding Rule 1.15(a), the Panel found:

"Respondent's Exhibits 2 and 3 show deposits and withdrawals from the Lee Law Office IOLTA Trust Account. A wire transfer was made into that account on October 13, 2010 in the amount of $139,999.00. Thereafter, Lee withdrew the entirety of the settlement funds which he used for personal purposes believing he had earned them. Because the contingency fee agreement had never been reduced to writing, and the settlement agreement was not definite in terms of whether the satisfaction of the Texas judgment was to be used in determining a monetary benefit to Wilkinson that would entitle Lee to receive a fee based thereon, Lee had an obligation to communicate with Wilkinson before withdrawing of the entire amount of the settlement funds from his trust account. The funds should have been retained in the Lee Law Office Trust Account until Wilkinson had approved of the fee Respondent was to receive from his representation of Wilkinson. The Hearing Panel concludes that Respondent violated Rule 1.15(a)."

Regarding Rule 1.15(e), the Panel found:

"If [it] is further alleged the Respondent violated N.D. R. Prof. Conduct 1.15(e) (disputed property), which provides when, in the course of representation, a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

"The Hearing Panel finds that the Respondent violated this Rule by not holding in trust those settlement funds which he was not entitled to receive. Again, because the terms of his employment were uncertain because the contingent fee was not reduced to writing, Respondent was under an obligation to work out with the client what the fee would be before he paid himself from the settlement proceeds."

[¶ 33] The Hearing Panel concluded a Rule 1.15(a) violation occurred because "[t]he funds should have been retained in the Lee Law Office Trust Account until Wilkinson had approved of the fee Respondent was to receive from his representation of Wilkinson." Rule 1.15(a) states the general rule that "[a] lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property." N.D.R. Prof. Conduct 1.15(a).

[¶ 34] The Hearing Panel also found a violation of the narrower and more particular Rule 1.15(e) because Lee did not retain in a trust account settlement funds which were in dispute and which he was not entitled to receive until the fee dispute was resolved. Rule 1.15(e) provides, "When, in the course of representation, a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved."

[¶ 35] Subsections (a) and (e) of Rule 1.15 require similar—but not identical—lawyer action based on the circumstances. Subsection (a) is the general rule requiring segregation of lawyer and client funds, and requiring placement of client funds in a trust account. *See Disciplinary Bd. v.*

*Kellington,* 2011 ND 241, ¶ 14, 809 N.W.2d 298 (Crothers, J., dissenting) (" 'The prohibition against commingling ensures that a lawyer's creditors will not be able to attach clients' property.' … '[T]he prohibition also prevents lawyers from shielding personal assets from their own creditors by hiding funds in client trust accounts.' ") (quotation and citations omitted); *In re Varriano,* 2010 ND 12, ¶ 2, 777 N.W.2d 852 (imposition of reciprocal discipline for using client trust account to shelter personal funds from the Internal Revenue Service); *Disciplinary Bd. v. Overboe,* 2009 ND 40, ¶ 6, 763 N.W.2d 776 (deceptive use of trust account to shield personal funds from judgment creditors); *In re Edinger,* 2005 ND 207, ¶ 2, 706 N.W.2d 790 (imposition of reciprocal discipline for using client trust account as a business and personal account).

[¶ 36] Subsection (e) is more specific than subsection (a) and requires placement in a trust account of "property in which two or more persons (one of whom may be the lawyer) claim interests." N.D.R. Prof. Conduct 1.15(e). The Hearing Panel found violation of both subsections based on the same conduct—Lee's failure to separately hold that portion of the settlement money in dispute until the disputed ownership was resolved. Doing so presents two concerns. First, having found a Rule 1.15(e) violation, I believe it improper to find a Rule 1.15(a) violation for the same conduct. *Disciplinary Bd. v. Wolff,* 2010 ND 175, ¶ 34, 788 N.W.2d 594 (Crothers, J., specially concurring) (objecting to "piling on" by finding violation of Rules 1.15(c) and 1.5 based on identical conduct). Second, finding a violation of Rules 1.15(a) and 1.15(e) based on the same conduct fails to respect the different functions of the respective subsections.

[¶ 37] This latter point is not merely an academic distinction. The general rule is that a lawyer's contingent fee is due when the underlying litigation has been resolved. *See, e.g., Cox v. Boggs,* 899 So.2d 770, 773 (La.Ct.App.2005) ("The attorney's right to a contingency fee is not acquired until the claim in the underlying case is reduced to judgment or settlement.") (citations omitted); *Hoover Slovacek LLP v. Walton,* 206 S.W.3d 557, 562 (Tex.2006) (Discharged lawyer working under contingent fee contract "is entitled to receive the specified fee only when and to the extent the client receives payment.") (citation omitted). Here, Wilkinson's case had been settled. Settlement funds in the underlying lawsuit had been paid by the opposing party and were deposited in Lee's client trust account. Therefore, at a time not clear from the record (but likely at or near when funds reached the trust account), the underlying case was resolved and everyone apparently agreed Lee was entitled to $14,000 of the $140,000 settlement payment.

[¶ 38] According to the general rule on contingent fees, upon final settlement of the underlying case, $14,000 of the settlement proceeds became Lee's property and ceased being Wilkinson's property. As Lee's property, the funds could not remain in the trust account. *See Disciplinary Bd. v. Kellington,* 2011 ND 241, ¶ 14, 809 N.W.2d 298 (Crothers, J., dissenting); *In re Varriano,* 2010 ND 12, ¶ 2, 777 N.W.2d 852; *Disciplinary Bd. v. Overboe,* 2009 ND 40, ¶ 6, 763 N.W.2d 776; *In re Edinger,* 2005 ND 207, ¶ 2, 706 N.W.2d 790. And, while Rule 1.15(e) requires deposit of amounts in dispute, once the dispute ends the Rule commands, "The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute." Thus, a lawyer is subject to discipline for not placing or leaving disputed funds in a trust account. At the same time, a lawyer is subject to discipline for not promptly disbursing his funds from the trust account once the dispute ends. Be-

cause of these competing duties, disciplinary counsel, respondent's counsel, the disciplinary board and this Court owe it to practicing lawyers to apply Rule 1.15 with precision.

[¶ 39] Careful application of Rule 1.15 also is required to permit consistent application of Rule 1.5(c). Rule 1.5(c) generally allows use of contingent fee contracts and directs in part:

"Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination, including itemization of expenses."

N.D.R. Prof. Conduct 1.5(c).

[¶ 40] In *Attorney Grievance Comm'n v. Sapero,* 400 Md. 461, 929 A.2d 483, 495 (2007), the question was whether the written statement required by Rule 1.5(c) must be provided at the time of actual settlement or at a later date when remittance was made to the client after all contingent and certain expenses had been deducted and the method of calculating the statement was absolutely certain. The Maryland court concluded Rule 1.5(c) is a notice provision designed to keep clients reasonably informed about the status of their case. *Id.* at 496. The court held, "[T]he contingent fee matter concluded upon the [clients'] acceptance of the settlement agreement and the deposit of the settlement proceeds into [the attorney's] escrow account." *Id.* Therefore, the attorney "should have furnished his clients with a written statement contemporaneously with the settlement of the case even though there were outstanding medical bills that were contested." *Id.*

[¶ 41] Reading Rules 1.5(c) and 1.15(e) together demonstrates the need for precise factual determinations about the timing of events controlling ownership of the property involved. Reading these rules together also requires their precise and focused application so that lawyers will better understand what they must do when receiving and distributing contingent fees and so that clients will understand what to expect from their lawyers under the same circumstances.

[¶ 42] Here, the finding of multiple rule violations based on identical conduct and failing to precisely apply Rules 1.15(a) and 1.15(e) are problematic. However, for reasons articulated by the majority, neither of these problems change the result that ethical violations have been proven for which a 60–day suspension is appropriate. I therefore specially concur in the result.

[¶ 43] Daniel J. Crothers