# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 146

In the Matter of the Application for
Disciplinary Action Against Stephen J.
Baird, a Member of the Bar
of the State of North Dakota

Disciplinary Board of the Supreme Court
of the State of North Dakota,                                            Petitioner

     v.

Stephen J. Baird,                                                         Respondent

## Nos. 20210239, 20210329 & 20210330

Application for disciplinary action.

DISBARMENT ORDERED.

Per Curiam.

Kara J. Erickson, Bismarck, ND, for petitioner.

Stephen J. Baird, Fargo, ND, self-represented.

**Per Curiam.**

[¶1]   The Supreme Court has before it a report from a hearing panel of the disciplinary board recommending Stephen J. Baird be disbarred from the practice of law in North Dakota, refund three clients advance fees they paid, and pay the costs and expenses of disciplinary proceedings. We adopt the hearing panel's findings and recommended sanctions as explained below, and order disbarment.

I

[¶2]   The North Dakota Constitution vests this Court with authority to develop and administer a system for lawyer disability and discipline. N.D. Const. art. VI, § 3; N.D.R. Lawyer Discipl. 1.1(A). This Court exercises that authority in part through inquiry committees and a disciplinary board. The inquiry committees screen lawyer disciplinary complaints for initial action. *Id*. at Rule 2.4(F); Rule 3.1(A) and (D). Inquiry committees can, among other things, direct disciplinary counsel to file formal proceedings before the disciplinary board. *Id*. at Rule 2.4(F)(2)(e). Upon receipt of formal charges of misconduct, the board must conduct a hearing through a hearing panel. *Id*. at Rule 2.1(H)(2). The hearing panel is required to conduct the hearing and provide this Court with a report containing findings and recommendations for discipline. *Id*. at Rule 2.3(B).

[¶3]   Upon receipt of findings and recommendations from the disciplinary board, this Court reviews the proceeding de novo on the record. *In re Discipl. Action Against McDonald,* 2000 ND 87, ¶ 13, 609 N.W.2d 418. The nature of this Court's review is well established:

> "Disciplinary counsel has the burden to prove each alleged violation by clear and convincing evidence. *In re Discipl. Action Against Lee,* 2013 ND 151, ¶ 9, 835 N.W.2d 836. Clear and convincing evidence is evidence that leads to a firm belief or conviction the allegations are true. *Id.* 'We give due weight to the

findings, conclusions, and recommendations of the hearing panel, but we do not act as a "rubber stamp" for those findings and recommendations.' *McDonald*, at ¶ 13. We give deference to the hearing panel's findings on matters of conflicting evidence when the panel has heard the witnesses and observed their demeanor. *Id.* We also give deference to the hearing panel's findings on the witnesses' credibility because the hearing panel has the opportunity to hear the witnesses testify and observe their demeanor. *Lee,* at ¶ 9. We consider each case on its own facts to determine what discipline is warranted. *McDonald,* at ¶ 13."

*In re Discipl. Action Against Overboe*, 2014 ND 62, ¶ 9, 844 N.W.2d 851.

II

[¶4]   Baird was admitted to practice law in North Dakota in 2013. He is not currently licensed in this state. In August 2020, Maurice Mensah filed a disciplinary complaint against Baird. On April 27, 2021, disciplinary counsel filed formal charges against Baird alleging Baird failed to act with reasonable diligence, failed to adequately communicate with him about the representation, and failed to take reasonable steps to protect Mensah's interests for a period when Baird abandoned his representation of Mensah.

[¶5]   On August 2, 2021, the hearing panel issued default findings of fact, conclusions of law and recommendations for discipline. On October 6, 2021, this Court remanded the matter for additional findings. On remand, the disciplinary board consolidated Mensah's complaint with complaints against Baird by Christopher Gbagir and Daniel P. Odoi. On March 9, 2022, the hearing panel conducted a hearing at which the complainants testified but Baird did not appear or participate in the proceedings.

[¶6]   On May 11, 2022, the hearing panel issued a report containing amended findings of fact, conclusions of law and recommendations in the consolidated cases. The hearing panel recommended that Baird be disbarred, be assessed costs and expenses of disciplinary proceedings totaling $5,528.78, ordered to refund to Mensah, Gbagir and Odoi advance fees paid to Baird in the amounts

2

of $750, $2,000 and $1,800 respectively, and be ordered to comply with N.D.R. Lawyer Discipl. 6.3, regarding notice.

[¶7]   The hearing panel's report was served on Baird and disciplinary counsel on May 24, 2022, and forwarded to the Supreme Court. Objections to the report were due within 20 days of service of the report. N.D.R. Lawyer Discipl. 3.1(F)(2). No objections were received and the matter was submitted to this Court for consideration.

## III

[¶8]   Under N.D.R. Lawyer Discipl. 3.1(F)(2) the hearing panel's report contained findings of fact in each matter, which we adopt as summarized below.

## A

### File No. 6567-SE-2009 (Mensah)

[¶9]   In February 2020, Maurice Mensah contacted Baird for representation in an immigration matter focusing on Mensah obtaining citizenship and immigration status. Baird accepted the representation and received $750 as half of his fee. In March 2020, Baird informed Mensah that he would be closing his office for the month due to the Covid-19 pandemic, but that he would reopen in April 2020. Baird also advised that he was not taking phone calls, and instead Mensah should text or email him.

[¶10] Mensah attempted to communicate with Baird from April to August 2020 by leaving telephone voice messages, sending emails and text messages, and leaving written notes under Baird's office door. Baird did not respond to any of Mensah's attempted communications. The hearing panel found Baird abandoned his representation of Mensah during that time.

[¶11] In August 2020, Mensah demanded a refund of money he paid Baird, and filed the disciplinary complaint leading to this proceeding. Baird thereafter resumed communicating with Mensah. In December 2020, Baird filed Mensah's papers with the United States Citizenship and Immigration Services

3

(USCIS). Baird did not tell Mensah about the filing; however, Mensah found out through his own efforts that his application was accepted, and he obtained a receipt number allowing him to track the progress of the filing. At about this same time, Baird withdrew from the representation by telling Mensah he no longer wanted to represent Mensah and suggesting he hire another lawyer. Upon withdrawal, Baird did not provide Mensah with his file or return any funds to him.

B

File No. 6604-SE-2101 (Gbagir)

[¶12] In the spring of 2020, Baird agreed to represent Christopher Gbagir on an application for asylum, with his wife and children as riders. Gbagir completed all of the necessary documentation, submitted their original passports to Baird with the application, signed a retainer agreement and paid $2,000 as a partial fee.

[¶13] In September 2020, Baird informed Gbagir that he filed an application for him with the USCIS. Thereafter Gbagir attempted to communicate with Baird regarding his case and its status. When Gbagir visited Baird's office during working hours, it was locked and did not appear that anyone was there. Gbagir called Baird's office, left voicemails, sent emails and text messages, and left written messages slipped under Baird's office door on several occasions. Baird failed to respond to any of these attempted communications for two months. In November and December 2020, Baird told Gbagir that they were waiting for action from USCIS, and that he had no additional information.

[¶14] By chance meeting, Gbagir saw Baird in person in January 2021 when Baird was moving offices. At that meeting, Baird returned Gbagir's and his family's passports. Baird said he had no status updates and could not provide Gbagir with confirmation of USCIS's receipt of his application. Gbagir later contacted USCIS himself and confirmed using his passport number that no application had been received by USCIS on Gbagir's behalf. Gbagir later learned a United States Postal Service tracking number provided to him by

4

Baird had been obtained online, but that the tracking number did not indicate a document was ever mailed by Baird.

[¶15] Prior to a one-year deadline to seek asylum, which expired in March 2021, Gbagir asked Baird to "refile" the application. Gbagir mailed that application himself in February 2021. Baird included a cover letter asking that, if two matters were received by USCIS on behalf of Gbagir, the matters should be merged and treated as one file. Gbagir never received a receipt number for the filing Baird claimed he made. From these facts we conclude Baird withdrew from the representation before completing his agreed upon work for Gbagir. From these facts the hearing panel concluded, and we agree, Baird did not complete and submit the asylum application in September 2020 as he told Gbagir.

## C

### File No. 6605-SE-2101 (Odoi)

[¶16] In August 2020, Daniel P. Odoi retained Baird for an adjustment of status with USCIS to obtain a green card, get a work authorization, and travel permit. Baird accepted a partial payment of $1,800 for the work and $1,760 for the USCIS filing fee, totaling $3,560.

[¶17] In September 2020, Baird told Odoi he submitted the application for an adjustment of status. Odoi did not receive a subsequent communication from Baird about an application receipt from USCIS. After six months, Odoi attempted to communicate with Baird regarding his case and its status. Odoi visited Baird's office during working hours and found it was locked. Odoi called Baird's office, left voicemails, sent emails and text messages, and left written messages under Baird's office door. Baird did not respond to any of the communications for approximately four months.

[¶18] Baird never provided Odoi with a verification of the mailing to confirm the matter was submitted to USCIS, or a receipt from USCIS showing it received the filing. From these facts the hearing panel concluded, and we agree,

Baird did not complete or file the application for Odoi's adjustment of status with the USCIS as he told Odoi.

[¶19] In February 2021, Odoi finally spoke with Baird regarding his case and obtained a refund of the $1,760 USCIS filing fee so that Odoi could "resubmit" the application himself. Odoi completed the application and submitted it on his own. He did not receive any drafts of documents from Baird, nor did he receive a copy of his file. From these facts we conclude Baird withdrew from the representation before completing his agreed upon work for Odoi. Despite not completing the application or filing it for Odoi, Baird did not refund any portion of the legal fees paid to him by Odoi.

IV

[¶20] Under N.D.R. Lawyer Discipl. 3.1(F)(2) the hearing panel provided a report containing recommendations for discipline, including mitigating and aggravating circumstances affecting the nature or degree of recommended discipline. We adopt the hearing panel's recommendations as indicated below.

A

[¶21] Baird violated N.D.R. Prof. Conduct 1.3 by knowingly failing to act with reasonable diligence and promptness. In all three matters, Baird unreasonably delayed taking action to further the representations. For Mensah, Baird delayed filing his matter without explanation, filed the documents months later, but then only after Mensah filed a disciplinary complaint. For Gbagir, Baird never filed the time-sensitive asylum-related documents. Baird's lack of diligence placed the Gbagirs in a vulnerable situation because he kept their original passports. As a result, they did not have government issued identification so they would have been detained if stopped by law enforcement. Pending a change in immigration status, Gbagir could not work, and not having their passports also meant he and his family were not able to receive money sent to them.

[¶22] For Odoi, Baird never completed or filed paperwork for adjustment of Odoi's legal status. As a result, Odoi experienced a six-month delay in receiving

a work authorization to support his pregnant wife, and later his growing family. The lack of travel documents that Baird agreed to obtain also caused Odoi to not be able to travel to attend his father's funeral in Nigeria.

[¶23] For each matter, Baird knowingly failed to provide the legal services he was hired to provide, and his unreasonable delays exposed the clients to potential or serious injury under the North Dakota Standards for Imposition of Lawyer Sanctions.

## B

[¶24] Baird violated N.D.R. Prof. Conduct 1.4 by knowingly failing to reasonably communicate with Mensah regarding his case. Baird did not communicate with or respond to Mensah regarding the representation for extended periods. Although no deadline existed for filing Mensah's naturalization application and his green card did not expire until 2023, Baird frequently provided misinformation about the status of Mensah's filing.

[¶25] For Gbagir, Baird did not reasonably communicate with or respond to his requests for information about the status of his filing for asylum. When communication occurred, Baird frequently provided misinformation about the status of Gbagir's filing. Gbagir was an immigrant seeking asylum in the United States, and was a vulnerable client. Baird's delay in communicating delayed Gbagir from seeking other legal representation on his time-sensitive filing.

[¶26] For Odoi, Baird did not reasonably communicate with or respond to his requests for information about the status of his filing for a green card, work authorization and a travel permit. When communication occurred, Baird frequently provided misinformation about the status of Odoi's filing. Baird's delay in communicating delayed Odoi from seeking other legal assistance or acting on his own to obtain a change in his legal status and preventing him from being able to lawfully work in the United States during the pendency of the matter.

## C

[¶27] The hearing panel recommended we find Baird violated N.D.R. Prof. Conduct 1.16(e) when he knowingly failed to take reasonable steps to protect Mensah's interests by terminating the representation, including refunding his unused fee or returning Mensah's file and records so that he could seek other counsel. By plain terms, Rule 1.16(e) imposes on a lawyer the obligations to refund fees and return files upon termination of the representation. "Terminating the representation" is not a violation of Rule 1.16(e); rather it is the trigger for the requirements to refund fees and return files. Here, Baird terminated his representations before completing the services he agreed to provide Mensah, Gbagir and Odoi. Further, Baird's "abandonment" of Mensah as a client could be a termination of the representation supporting a finding Baird violated Rule 1.16(e).

[¶28] The hearing panel recommended that we conclude Baird's lack of work on or communications about Mensah's case from April 2020 to August 2020 constituted abandonment of Mensah as a client. The "abandonment" finding is an integral part of determining the appropriate sanction for Baird's ethical violations. *See* N.D. Stds. Imposing Lawyer Sanctions 4.41(a) ("Disbarment is generally appropriate when . . . a lawyer abandons the practice and causes serious or potentially serious injury to a client[.]"). Here, a determination of "abandonment" is called into question based on the record showing that, after Mensah filed a disciplinary complaint in August 2020, Baird resumed communicating with Mensah and completed the application portion of the representation. We note that another jurisdiction concluded a lawyer abandoned his practice through a temporary gap in representations, followed by resumed representations. *See In re Discipl. Proc. Against Wickersham,* 310 P.3d 1237, 1243-44 (Wash. 2013) (lawyer abandoned law practice for five months). We also note that sanction standard 4.41(a) applies to "a lawyer [who] abandons the practice and causes serious or potentially serious injury to a client." N.D. Stds. Imposing Lawyer Sanctions 4.41(a). Here, the hearing panel found Baird abandoned Mensah as a client, and did not find that Baird abandoned his law practice. Nevertheless, absent objection by Baird and absent the benefit of the full vigor of the adversarial process to resolve this

question, for purposes of this case we determine Baird temporarily abandoned his practice, including his representation of Mensah.

D

[¶29] The hearing panel recommended finding that, as to Gbagir, Baird violated N.D.R. Prof. Conduct 8.1(a) as follows:

> "During the course of the investigation of the matter, Baird knowingly made false statements in connection with the disciplinary proceedings regarding the initial filing of Gbagir's asylum application and his follow-up communication with Gbagir about that application."

[¶30] We do not adopt this conclusion because no supporting facts or findings have been provided or located in the record. We also note Baird defaulted in proceedings before the disciplinary board, and he did not make filings with this Court in opposition to the hearing panel report. Therefore, we do not find where Baird "knowingly ma[d]e a false statement of material fact" "in connection with a disciplinary matter." N.D.R. Prof. Conduct 8.1(a).

V

[¶31] Having found Baird violated N.D.R. Prof. Conduct 1.3, 1.4, and 1.16(e), the next step is to determine the appropriate disciplinary sanction. North Dakota has adopted a version of the American Bar Association Model Standards for Imposition of Lawyer Sanctions. Under those standards, the following factors generally are considered:

> "In imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors:
>     (a) the duty violated;
>     (b) the lawyer's mental state;
>     (c) the potential or actual injury caused by the lawyer's misconduct; and
>     (d) the existence of aggravating or mitigating factors."

N.D. Stds. Imposing Lawyer Sanctions 3.0.

9

[¶32] The hearing panel's report recommended Baird's disbarment under N.D. Stds. Imposing Lawyer Sanctions 4.40 and 4.41 for lack of diligence. Those standards provide:

> "4.4. Lack of Diligence. Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving a failure to act with reasonable diligence and promptness in representing a client:
>
> 4.41 Disbarment is generally appropriate when:
>
> (a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
> (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or
> (c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client."

[¶33] The hearing panel recommended that we consider as an aggravating circumstance that Baird received an admonition in February 2021 for a violation of N.D.R. Prof. Conduct 1.4 by not adequately communicating with his client. *See* N.D. Stds. Imposing Lawyer Sanction 3.0(d). A split of authority exists about whether another disciplinary offense is an aggravating factor when the other misconduct occurred at or near the same time as the matter at hand. *See* ABA Annotated Standards for Imposing Lawyer Sanctions, 452-54 (2d ed. 2019). Again, absent Baird's objection, for purposes of this case we will consider Baird's co-occurring misconduct an aggravating factor.

[¶34] The hearing panel also recommended that we consider as aggravating factors Baird's pattern of misconduct, multiple offenses, and vulnerability of the victims. *See* N.D. Stds. Imposing Lawyer Sanction 9.22(c), 9.22(d) and 9.22(h). Our findings adopted above support recognizing the aggravating factors of Baird's pattern of misconduct and commission of multiple offenses. Because we rely on Sanction Standard 4.41 regarding lack of diligence, Baird's

violations of N.D.R. Prof. Conduct 1.4 and 1.16(e) are both aggravating factors under N.D. Stds. Imposing Lawyer Sanctions 9.22(c) and consideration of the duties violated under Sanction 3.0(2).

[¶35] Regarding vulnerable clients, our findings above about Gbagir's asylum seeking status and Odoi's undocumented immigrant status support recognizing the aggravating factor. As to Mensah, the only suggested support was that, "[a]s an immigration client, Mensah was vulnerable because he was not able to check a docket to see whether filings had been made." We conclude the articulated basis for Mensah does not rise to the level of vulnerability constituting an aggravating factor.

[¶36] We have been provided with no evidence of mitigating factors. *See* N.D. Stds. Imposing Lawyer Sanctions 3.0(d). Nor have we been directed to information about Baird's mental state. *See id*. at 3.0(b).

[¶37] Applying N.D. Stds. Imposing Lawyer Sanctions 4.41 to Baird's misconduct in the three consolidated matters, we conclude disbarment is the appropriate sanction.

[¶38] Baird violated N.D.R. Prof. Conduct 1.3 by temporarily abandoning his representation of Mensah and knowingly failing to diligently make immigration filings. Baird violated N.D.R. Prof. Conduct 1.4 by knowingly failing to reasonably communicate with him about the representation, and misrepresented fact to Mensah when communications occurred. Baird also violated N.D.R. Prof. Conduct 1.16(e) by knowingly failing to take reasonable steps to protect Mensah's interests by not refunding his unused fee or returning Mensah's file and records, which delayed or prevented Mensah from seeking other representation for completion of his immigration case. Baird's violations caused Mensah potential injury and potentially serious injury.

[¶39] Baird similarly violated N.D.R. Prof. Conduct 1.3 by knowingly failing to diligently represent Gbagir and Oboi by not acting on their time-sensitive immigration filings. Baird violated N.D.R. Prof. Conduct 1.4 by knowingly failing to reasonably communicate with Gbagir and Oboi about their

representations, and misrepresented fact to them when communications occurred. Baird also violated N.D.R. Prof. Conduct 1.16(e) by knowingly failing to take reasonable steps to protect Gbagir's and Oboi's interests by not refunding their unused fee or returning Gbagir's and Oboi's file and records, which delayed or prevented Gbagir and Oboi from seeking other representation for completion of their immigration cases. For both Gbagir and Oboi, Baird's misconduct exposed them to potentially serious and serious injury, including unnecessary delay in attempting to change their immigration status, economic hardship, and possible removal from the United States.

## VI

[¶40] Based on the foregoing:

[¶41] IT IS ORDERED, that Stephen J. Baird is DISBARRED from the practice of law in North Dakota effective immediately.

[¶42] IT IS FURTHER ORDERED, that within 90 days of entry of judgment, Baird refund to Mensah, Gbagir, and Odoi their advance fees paid of $750, $2,000 and $1,800 respectively.

[¶43] IT IS FURTHER ORDERED, that Baird pay $5,528.78 for the costs and expenses of these disciplinary proceedings, payable to the Secretary of the Disciplinary Board, 300 East Boulevard Avenue, Bismarck, North Dakota, 58505-0530, within 90 days of entry of judgment.

[¶44] IT IS FURTHER ORDERED, that for any amounts already paid by the North Dakota Client Protection Fund on Baird's behalf to Mensah, Gbagir, or Odoi, he make restitution within 90 days of entry of the judgment in this matter. For any amounts relating to this matter paid in the future by the North Dakota Client Protection Fund, Baird make restitution to the Fund within 90 days of receiving notice payment was made.

[¶45] IT IS FURTHER ORDERED, that any reinstatement is governed by N.D.R. Lawyer Discipl. 4.5 and cannot occur until at least five years from the effective date of disbarment and compliance with the conditions of this order.

[¶46] IT IS FURTHER ORDERED, that Baird comply with N.D.R. Lawyer Discipl. 6.3 regarding notice.

[¶47] Jon J. Jensen, C.J.
      Gerald W. VandeWalle
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte