2009 ND 40

**In the Matter of the Application for DISCIPLINARY ACTION AGAINST David A. OVERBOE, A Member of the Bar of the State of North Dakota**

**Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner**

**v.**

**David A. Overboe, Respondent.**

**No. 20080219.**

Supreme Court of North Dakota.

April 2, 2009.

Paul W. Jacobson, Disciplinary Counsel, Bismarck, for petitioner.

David A. Overboe, Fargo, respondent, pro se.

## SUSPENSION ORDERED

PER CURIAM.

[¶ 1] David A. Overboe objects to a Report of a Hearing Panel of the Disciplinary Board of this Court, which recommended reciprocal discipline against him after the Minnesota Supreme Court sus-

pended his license to practice law in Minnesota for a minimum of one year and ordered him to pay $900 in costs. *See In re Disciplinary Action Against Overboe,* 745 N.W.2d 852 (Minn.2008). We conclude Overboe has not demonstrated that reciprocal discipline should not be imposed against him under the criteria in N.D.R. Lawyer Discipl. 4.4(D). We accept the hearing panel's report, and we suspend Overboe's license to practice law in North Dakota for one year and order him to pay $1,934 in costs.

I

[¶ 2] Overboe was admitted to practice law in North Dakota in 1972, and he was admitted to practice law in Minnesota in 1980.

[¶ 3] In 2004, Minnesota disciplinary authorities filed a formal disciplinary action against Overboe in that state, alleging he had deceptively used a trust account to shield his personal funds from judgment creditors, he had made misrepresentations and failed to cooperate with Minnesota disciplinary authorities during the disciplinary investigation, and he had commingled client funds with personal funds in a trust account. The charges related to two separate trust accounts Overboe maintained in North Dakota, a Western State Bank trust account and a Wells Fargo IOLTA trust account, and were triggered by an overdraft on his IOLTA trust account, which Overboe had designated on his Minnesota license application as his client trust account. *Overboe,* 745 N.W.2d at 855–56. Both trust accounts were entitled "Overboe Trust Account." *Id.* at 856. As required by Minnesota rules, Wells Fargo notified Minnesota disciplinary authorities of the overdraft on the IOLTA Overboe Trust Account, which resulted in Minnesota authorities asking Overboe for an explanation and documents about that

account. *Id.* That request resulted in further inquiries to Overboe for information, which ultimately lead to Overboe's disclosure of the Western State Bank Overboe Trust Account and the disciplinary proceedings. *Id.* at 856–60.

[¶ 4] After a hearing, a Minnesota referee found Overboe had violated Minnesota Rules of Professional Conduct and recommended suspension of Overboe's license to practice law in Minnesota for a minimum of one year. The referee found Overboe did not use the Western State Bank Overboe Trust Account as a fiduciary account in his capacity as a lawyer, but as a personal account, and in view of a $1.4 million judgment against him and his admission that the account was to protect his personal funds, the referee found the use of that trust account was deceptive under Minnesota rules. *Overboe,* 745 N.W.2d at 859. The referee found Overboe's representations to Minnesota disciplinary authorities about his trust accounts were false and inconsistent and violated Minnesota rules. *Id.* The referee also found Overboe had commingled personal and client funds in his IOLTA Overboe Trust Account in violation of Minnesota rules. *Id.*

[¶ 5] In March 2008, the Minnesota Supreme Court held the referee's findings were not clearly erroneous and suspended Overboe's license to practice law in Minnesota for a minimum of one year and ordered him to pay $900 in costs. *Overboe,* 745 N.W.2d at 862–69. The Minnesota Supreme Court held that North Dakota Rules of Professional Conduct applied to the charges involving the two trust accounts Overboe maintained in North Dakota and that Minnesota rules applied to his representations to Minnesota disciplinary authorities. *Id.* at 861–62.

[¶ 6] For the allegations involving the deceptive use of the Western State Bank

trust account, the Minnesota Supreme Court said the proper use of a trust account was to further a fiduciary relationship between the trustee and beneficiaries and to benefit at least one other person besides the trustee. *Overboe,* 745 N.W.2d at 863. The court cited the lawyer's duty of truth and candor and concluded:

It is undisputed that Overboe has had a $1.4 million dollar judgment against him since 1990 and that the judgment remains unpaid. Further, in his letters to the Director before and during the disciplinary investigation, Overboe stated that the purpose of his WSB trust account was to protect his and his wife's funds from judgment creditors. Overboe emphasized that it was important for him to "not keep a great deal of money in [his] own account, because the law firm that obtained the Judgment is right next door to [him]." Evidence presented at the hearing also showed that Overboe was the source of every deposit into the WSB trust account and the payee of approximately half of the withdrawals. Additionally, the majority of the funds deposited into the account were Overboe's earned legal fees. Only two checks written on the account were in the name of Overboe's wife.

In light of Overboe's admissions, and the evidence presented at the hearing, we conclude that the referee was not clearly erroneous in finding that Overboe did not use his WSB trust account as a trustee in a fiduciary capacity but instead used it as his own personal account. Therefore, in light of the $1.4 judgment against Overboe, it was not clearly erroneous for the referee to conclude that Overboe acted deceptively when he labeled his WSB account as a "trust" account for the purpose of shielding his personal funds from judgment creditors. While the referee in-

correctly applied Minn. R. Prof. Conduct 8.4(c) to Overboe's conduct, North Dakota has parallel rules-N.D. R. Prof. Conduct 8.4(c) and N.D. R. Lawyer Discipl. 1.2A(3). Therefore, we conclude that Overboe violated N.D. R. Prof. Conduct 8.4(c) and N.D. R. Lawyer Discipl. 1.2A(3) by engaging in "conduct involving dishonesty, fraud, deceit, or misrepresentation."

*Overboe*, at 863–64.

[¶ 7] For the allegations involving commingling of client and personal funds in the IOLTA trust account, the Minnesota Supreme Court said:

Evidence presented at the hearing included numerous letters from Overboe to the Director indicating that there were "no client funds" in his IOLTA account at the time of the overdraft and since April 2003. Overboe asserted that the majority of the surplus in his IOLTA account when client funds were in the account was his wife's money and that his wife was a client. But Overboe did not make this assertion until well into the investigatory process and after the Director notified Overboe that having his personal funds in an IOLTA account violates the professional conduct rules. Further, Overboe offered no specific evidence that his wife was a client. Overboe also admitted at the hearing that the $4,500 he deposited into the IOLTA account on October 6, 2003, was not client money. Finally, Overboe offered no evidence that any of the personal funds in the IOLTA account were for the permissible purpose of "paying bank service charges, fees associated with credit card payments, or wire transfers related to that account." N.D. R. Prof. Conduct 1.15(b).

Based on the evidence and on Overboe's own statements, we conclude that it was not clearly erroneous for the ref-

eree to find that Overboe maintained personal funds in his IOLTA account and that he commingled personal and client funds in the account. While the referee applied the Minnesota rules in making this legal conclusion, we conclude that Overboe violated the parallel North Dakota rule, N.D. R. Prof. Conduct 1.15, by keeping personal funds in his IOLTA account and by commingling his personal funds with client funds.

*Overboe*, 745 N.W.2d at 864–65.

[¶ 8] The Minnesota Supreme Court also concluded the referee did not clearly err in finding Overboe made misrepresentations and failed to cooperate with Minnesota disciplinary authorities during the investigation. *Overboe*, at 865–66. The Minnesota Supreme Court suspended Overboe's license to practice law in Minnesota for a minimum of one year and ordered him to pay $900 in costs. *Id.* at 869.

[¶ 9] The North Dakota Disciplinary Board thereafter sought reciprocal discipline against Overboe in North Dakota under N.D.R. Lawyer Discipl. 4.4(D), which provides that a final determination of lawyer misconduct by another jurisdiction conclusively establishes misconduct for a disciplinary proceeding in North Dakota and requires this Court to impose identical discipline unless the lawyer demonstrates and it clearly appears upon the face of the record that:

(1) The procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the court could not, consistent with its duty, accept as final the conclusion on that subject; or

(3) The imposition of the same discipline by the court would result in grave injustice; or

(4) The misconduct established warrants substantially different discipline in this state.

[¶ 10] Overboe responded that reciprocal discipline was not warranted and requested a hearing. A hearing panel recommended the imposition of reciprocal discipline of suspension of Overboe's license to practice law in North Dakota for one year and the payment of $1,934 in costs. The hearing panel recommended finding Overboe had not demonstrated: (1) the Minnesota procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; (2) there was no infirmity of proof establishing Overboe's misconduct so the Minnesota decision could not be accepted as final; (3) the imposition of the same discipline would not result in a grave injustice; and (4) the misconduct did not warrant substantially different discipline in North Dakota.

II

■ [¶ 11] Overboe argues reciprocal discipline should not be imposed against him because the Minnesota Supreme Court used the wrong standard to assess the referee's findings in that case and would not have imposed discipline against him if it had applied a de novo analysis. Citing the Minnesota Supreme Court's use of North Dakota rules to evaluate Overboe's conduct regarding his North Dakota trust accounts, Overboe argues the Minnesota Supreme Court should have conducted a de novo analysis of that conduct under the North Dakota rules and should have required clear and convincing evidence of those violations, rather than reviewing the Minnesota referee's decision under the clearly erroneous standard. He claims the result in Minnesota would have been different if the Minnesota Supreme Court had employed a de novo analysis and required clear and convincing evidence. He argues his case is different from *Disciplinary Board of Supreme Court v. Dvorak*, 1998 ND 134, ¶¶ 15–19, 580 N.W.2d 586, in which this Court held Minnesota's clearly erroneous standard of review for Minnesota discipline, rather than the de novo standard used in North Dakota, did not deprive an attorney of due process in reciprocal disciplinary proceedings in North Dakota.

[¶ 12] In *Dvorak*, 1998 ND 134 ¶¶ 15–19, 580 N.W.2d 586, this Court said both North Dakota and Minnesota require clear and convincing evidence to impose discipline against an attorney. We recognized, however, that we consider attorney disciplinary proceedings de novo and require clear and convincing evidence to establish misconduct while the Minnesota Supreme Court applies a clearly erroneous standard of review of a referee's decision. *Id.* at ¶ 15. We rejected attorney Dvorak's arguments about the different standards:

> While use of the "clearly erroneous" standard might place an attorney at somewhat of a disadvantage when attempting to overturn an adverse finding of a hearing body, Dvorak has not convinced us that the use of the "clearly erroneous" standard by the Minnesota Supreme Court, rather than the de novo standard used in this jurisdiction, amounts to a denial of her due process rights.
>
> . . . .
>
> If we were to accept Dvorak's argument that use of the clearly erroneous standard of review by the Minnesota Supreme Court created a grave injustice, we would hold NDRLD 4.4 on reciprocal discipline is inapplicable to discipline imposed on a lawyer by any court

which does not use, as does this Court, the de novo standard of reviewing the findings of a hearing body. We decline to do so. Contrary to Dvorak's suggestion, there is nothing inherently evil or unjust about appellate court review under the clearly erroneous standard. Merely because the Minnesota Supreme Court uses the more deferential clearly erroneous standard in reviewing the referee's findings does not render imposition of reciprocal discipline gravely unjust.

*Dvorak*, at ¶¶ 19, 23.

[¶ 13] Here, the North Dakota hearing panel said:

11. The Minnesota Supreme Court determined that alleged violations and issues relating to [Overboe's] management of his trust account or accounts should be determined according to the North Dakota rules. While the Court indicated it was applying North Dakota rules rather than Minnesota rules to such conduct, it noted that in each case North Dakota has "parallel rules" to those of Minnesota. Therefore, the substitution of North Dakota rules for Minnesota rules was more a matter of form than substance and such substitution did not detract from the fact that the referee made his findings under the standard of clear and convincing evidence.

12. The standard of review in disciplinary cases by the Minnesota Supreme Court is one of "clearly erroneous." The North Dakota Supreme Court reviews appeals on a de novo basis and continues to apply the standard of "clear and convincing" evidence. In *Disciplinary Board of the Supreme Court v. Dvorak, Supra,* the North

Dakota Supreme Court dispelled the argument that a different standard of review creates a lack of due process. As a result, the difference in review standards does not entitle [Overboe] to the relief requested.

[¶ 14] The issue in this case is a variation of the issue in *Dvorak*, because the Minnesota Supreme Court applied North Dakota rules for the two allegations of misconduct relating to Overboe's trust accounts maintained in North Dakota. Nevertheless, as the Minnesota Supreme Court recognized, the relevant rules are "nearly identical," *Overboe*, 745 N.W.2d at 861, n. 4, and Overboe is essentially asking this Court to require the Minnesota Supreme Court to use a de novo review for disciplinary action against Overboe's Minnesota license. We decline Overboe's invitation, and we consider this case in the context of the criteria for reciprocal discipline under N.D.R. Lawyer Discipl. 4.4(D). To the extent Overboe argues the Minnesota procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process under N.D.R. Lawyer Discipl. 4.4(D)(1), he has not claimed a lack of notice or opportunity to be heard and the due process holding in *Dvorak* is controlling.

[¶ 15] Overboe's principle argument is this Court should effectively retry his Minnesota disciplinary proceeding on the record compiled in Minnesota and make findings under this Court's de novo standard and the requirement for clear and convincing evidence.

[¶ 16] In *Dvorak*, 1998 ND 134, ¶ 21, 580 N.W.2d 586, this Court explained that to prevail on such a claim in a reciprocal disciplinary proceeding, the attorney must convince this Court there was an infirmity of factual support for the other state's disciplinary authority's findings under

N.D.R. Lawyer Discipl. 4.4(D)(2). The requirement for an infirmity of factual support corresponds with Overboe's arguments that he was not guilty of deceptive use of a trust account and that he did not commingle client funds and personal funds in a trust account. He claims that maintaining a personal trust account, the Western State Bank Overboe Trust Account, which was not used for client funds, was not deceptive use of a trust account. He asserts it is not against the law to use a personal trust account, and he claims a personal trust account not used for client funds is not deceptive. He also claims his personal and client funds were never commingled in his IOLTA trust account and evidence about the money in those accounts in the Minnesota case was "falsified."

[¶ 17] We conclude the Minnesota Supreme Court's analysis of Overboe's misconduct, albeit under a clearly erroneous standard of review, is persuasive, and we conclude Overboe has not demonstrated an infirmity of proof as to give rise to a clear conviction that this Court cannot accept the Minnesota decision for purposes of reciprocal discipline.

### III

[¶ 18] Overboe asserts a one-year suspension constitutes a grave injustice under the circumstance of this case. He claims the only evidence in the record of misconduct was that he failed to remove $4,500 in his money from his IOLTA trust account immediately after realizing it was not needed for a charitable purpose. He asserts a one-year suspension is harsh for that misconduct. In imposing discipline, however, the Minnesota Supreme Court relied, in part, on Overboe's prior record of discipline in this Court. *See Matter of Disciplinary Action Against Overboe*, 417 N.W.2d 853, 854 (N.D.1988) (suspending Overboe's license to practice law for 90 days for dishonesty, fraud, deceit, or misrepresentation); *Matter of Overboe*, 403 N.W.2d 1, 3 (N.D.1987) (suspending Overboe's license to practice law for six months for misuse of funds in client's trust account). The essence of Overboe's argument is to retry his Minnesota disciplinary proceeding in this reciprocal proceeding. We conclude he has not demonstrated the one-year suspension constitutes a grave injustice under N.D.R. Lawyer Discipl. 4.4(D)(3), or that his misconduct warrants different discipline under Rule 4.4(D)(4).

### IV

[¶ 19] Overboe argues the imposition of costs against him violates equal protection. He claims the provision for imposing costs against a disciplined attorney, but not authorizing costs for a prevailing attorney in a disciplinary proceeding, violates equal protection.

[¶ 20] However, Overboe is not a prevailing attorney in this disciplinary proceeding, and he has not been denied recovery of costs as a prevailing attorney. "A court may decide the merits of a dispute only if the parties demonstrate they have standing to litigate the issues." *Whitecalfe v. North Dakota Dep't of Transp.*, 2007 ND 32, ¶ 15, 727 N.W.2d 779. " 'Standing is the concept used "to determine if a party is sufficiently affected so as to insure that a justiciable controversy is presented to the court." ' " *Id.* (quoting *Nodak Mut. Ins. Co. v. Ward County Farm Bureau*, 2004 ND 60, ¶ 11, 676 N.W.2d 752). In *Whitecalfe*, at ¶ 16 (quoting *Flatt v. Kantak*, 2004 ND 173, ¶ 38, 687 N.W.2d 208), we explained that standing requires a two-pronged inquiry:

> First, the plaintiff must have suffered some threatened or actual injury resulting from the putatively illegal action. Secondly, the asserted harm must not be

a generalized grievance shared by all or a large class of citizens; the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights and interests of third parties.

[¶ 21] Overboe argues the provision for imposing costs against a disciplined attorney, but not authorizing costs for a prevailing attorney, violates equal protection. Overboe's argument is that prevailing attorneys are denied equal protection. However, Overboe is not a prevailing attorney in this disciplinary proceeding, and he has not incurred a threatened or actual injury as a prevailing attorney in a disciplinary proceeding. Rather, this disciplinary proceeding has imposed reciprocal discipline against Overboe, and we conclude he does not have standing to raise an equal protection challenge to costs on behalf of prevailing attorneys.

## V

[¶ 22] We accept the Disciplinary Panel's report, and we conclude reciprocal discipline is appropriate in this case. We suspend Overboe's license to practice law in North Dakota for one year from the date of this opinion, and we order him to pay $1,934 in costs.

[¶ 23] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.