2011 ND 241

In the Matter of the Application for DISCIPLINARY ACTION AGAINST Theresa L. KELLINGTON, a Member of the Bar of the State of North Dakota.

**Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner**

v.

**Theresa L. Kellington, Respondent.**

No. 20110261.

Supreme Court of North Dakota.

Dec. 20, 2011.

PER CURIAM.

[¶ 1] The Supreme Court has before it a Stipulation, Consent to Discipline, and Recommendation by the Hearing Panel from a Hearing Panel of the Disciplinary Board recommending Theresa L. Kellington be suspended from the practice of law for ninety days for violating N.D.R. Prof. Conduct 5.3, 1.15, and 1.16 with the suspension stayed and Kellington placed on probation for one year and she pay $500 in costs of the disciplinary proceeding. We conclude there is clear and convincing evidence Kellington violated N.D.R. Prof. Conduct 5.3, 1.15, and 1.16, and Kellington is suspended from the practice of law for ninety days with the suspension stayed and Kellington placed on probation for one year and order her to pay costs of the disciplinary proceeding.

[¶ 2] Kellington was admitted to practice law in North Dakota on November 22, 1995. On February 27, 2011, Kellington admitted service of a Summons and Petition for Discipline. The Petition asserts that Kellington failed to make reasonable efforts to ensure her firm had measures in place to give reasonable assurance her staff's conduct was compatible with her professional obligations; deposited or transferred unearned advance payments into a non-trust account and commingled the proceeds with her law firm's funds in the non-trust account; withdrew unearned advance payments from her law firm's trust account; failed to make timely refunds of unearned advance payments; and failed to refund unearned advance payments upon termination of representation.

[¶ 3] The Petition alleges Kellington's conduct in this matter violates N.D.R. Prof. Conduct 5.3, which provides that with respect to a nonlawyer employed by or associated with a lawyer, a partner and a lawyer who has comparable management authority in a law firm shall make reasonable efforts to ensure that the law firm has in effect measures giving reasonable assurance that the nonlawyer's conduct is compatible with the professional obligations of the lawyer; the lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the nonlawyer's conduct is compatible with the professional obligations of the lawyer; and a lawyer shall

be responsible for conduct of the nonlawyer that would be a violation of the Rules of Professional Conduct if the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct; or the lawyer has management or supervisory authority and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable action; N.D.R. Prof. Conduct 1.15, Fees, which provides that a lawyer shall promptly deliver to the client any funds or other property that the client is entitled to receive and, upon request by the client, shall promptly render a full accounting regarding such property; and N.D.R.P. Conduct 1.16, which provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as refunding any advance payment of fee or expenses that has not been earned or incurred.

[¶ 4] The Hearing Panel accepted the Stipulation, Consent to Discipline, and Recommendation. In recommending a sanction, the Hearing Panel considered N.D. Stds. Imposing Lawyer Sanctions 9.22(a) which recognizes prior disciplinary offenses as an aggravating factor and N.D. Stds. Imposing Lawyer Sanctions 9.32 recognizing a timely good faith effort to make restitution or rectify consequences of misconduct; a full and free disclosure to disciplinary board or cooperative attitude toward proceedings; and remorse as mitigating factors. The Hearing Panel also considered as a mitigating factor Kellington's participation in the Lawyer Assistance Program (LAP) and the development of an Individualized Assistance Plan (IAP), in which, among other things, Kellington agrees to the following:

1. Participation and cooperation in mentoring oversight of her law practice and other terms and conditions of the IAP, and work with an attorney mentor or mentors assigned by the LAP committee.

2. Participation in continuing education classes or self study materials focused on sole practitioners including law practice management.

3. Having direct and primary responsibility for handling of client funds and following a specific trust account management plan developed with the assistance of an attorney mentor or mentors.

4. Implementing procedures, including self audit checklists, if necessary and appropriate, for being more selective with potential new clients.

[¶ 5] The Stipulation, Consent to Discipline, and Recommendation was served on September 12, 2011, and forwarded to the Supreme Court. Objections to the Stipulation were due within 20 days of service of the report. No objections were received, and the matter was submitted to the Court for consideration.

■ [¶ 6] **ORDERED,** that the Stipulation, Consent to Discipline, and Recommendation of the Hearing Panel is adopted and Kellington is suspended from the practice of law for ninety days, with the suspension stayed and Kellington placed on probation for one year. The conditions of probation shall be the following:

1. Kellington must have no further disciplinary complaints during the period of probation found to be meritorious.

2. Kellington must comply with all terms and conditions specified for her participation in the LAP, including the terms and conditions of the IAP and any attorney mentor agreements (as the same may from time to time be amended with the concur-

rence of LAP and the Office of Disciplinary Counsel).

If the conditions of probation are violated, Kellington will be subject to revocation of probation, lifting of the stay, and active suspension from the practice of law for ninety days, without credit for any probationary period served.

[¶ 7] **IT IS FURTHER ORDERED,** Kellington shall, within thirty days of service of the Supreme Court's order or within such other time as the Supreme Court shall specify, provide an accounting of fees and expenses to Cynthia Cantwell and Joe Wolf and refund any amounts collected for fees that have not been earned or expenses that have not been incurred. If Kellington cannot locate Cantwell or Wolf, such that either client's refund constitutes unclaimed property under Chapter 47–30.1, N.D.C.C., Kellington agrees that she will proceed under the terms of the Uniform Unclaimed Property Act.

[¶ 8] **IT IS FURTHER ORDERED,** at the end of the period of probation, Kellington shall file with the Clerk of the Supreme Court and serve upon Assistant Disciplinary Counsel an affidavit stating that she has fully complied with the requirements of the Supreme Court's order and has paid all required fees, costs, and expenses.

[¶ 9] **IT IS FURTHER ORDERED,** that Kellington pay the costs and expenses of these disciplinary proceedings in the amount of $500, payable to the Secretary of the Disciplinary Board.

[¶ 10] **IT IS FURTHER ORDERED,** that due to the stay of suspension, notices or actions required under N.D.R.Lawyer Discipl. 6.3 need not be undertaken unless required by further order of the Court.

[¶ 11] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.

CROTHERS, Justice, dissenting.

[¶ 12] I agree with that part of the Majority Opinion accepting the Stipulation, Consent to Discipline and Recommendation of the Hearing Panel finding Kellington violated N.D.R. Prof. Conduct 1.15, 1.16 and 5.3 and suspending her from the practice of law for 90 days. But I respectfully disagree with that portion of the Majority Opinion staying the suspension. Because I do not agree with the Consent to Discipline in its entirety, I would reject the Consent to Discipline and remand this matter to the Disciplinary Board for further proceedings.

[¶ 13] Allegations in this matter surround improper trust account transactions. The Hearing Panel found Kellington "did not promptly issue refund checks from the [law firm] trust account but instead transferred the four clients' cumulative trust account balances of $3,310.85 from the [law firm] client trust account to the [law firm] business account, where the account balances were commingled with firm funds until refund checks were issued. [Law firm] was not entitled to any portion of the funds transferred." The Hearing Panel concluded, "Kellington should have known she was dealing improperly with the property of the clients named in the petition and caused injury or potential injury to the clients."

[¶ 14] Client funds must be held in a trust account to ensure their safekeeping from loss and to maintain ready availability to the client upon termination of the representation. N.D.R. Prof. Conduct 1.15(a) and (d). "The prohibition against commingling ensures that a lawyer's creditors will not be able to attach clients' property. *See In re Anonymous,* 698 N.E.2d 808 (Ind.1998) (commingling of lawyer and client funds would subject

clients to 'unacceptable risks,' such as attachment by creditors, or intended or unintended misappropriation by lawyer); *In re Glorioso*, 819 So.2d 320 (La.2002) (by commingling lawyer put clients' funds at risk of being seized by IRS to satisfy lawyer's tax liability)." Annotated Model Rules of Professional Conduct R. 1.15 annot. at 241–42 (7th ed.2011). "[T]he prohibition also prevents lawyers from shielding personal assets from their own creditors by hiding funds in client trust accounts." *Id.* at 242 (citations omitted); *Disciplinary Board v. Overboe*, 2009 ND 40, ¶ 6, 763 N.W.2d 776.

[¶ 15]  Jurisdictions uniformly hold lawyers responsible for a nonlawyer assistant's handling of trust account transactions:

> "Lawyers are responsible under Rule 5.3 for the mishandling of client funds by nonlawyer assistants. Courts view holding money in trust for clients as a nondelegable fiduciary responsibility that cannot be excused by someone else's ignorance, inattention, incompetence, or dishonesty. Although lawyers may employ nonlawyers to assist in fulfilling this fiduciary duty, lawyers must provide adequate training and supervision to ensure that ethical and legal obligations to account for client funds are being met. When it comes to handling client funds, 'there must be some system of timely review and internal control to provide reasonable assurance that the supervising lawyer will learn whether the employee is performing the delegated duties honestly and competently.'"

Annotated Model Rules of Professional Conduct R. 5.3 annot. at 450 (7th ed.2011) (citations omitted). Here, the Hearing Panel properly found violations of N.D.R. Prof. Conduct 1.15, 1.16 and 5.3.

[¶ 16]  The Hearing Panel's findings also alerted us that between 1996 and 2011 Kellington has been disciplined seven times prior to this proceeding. Those disciplines include two admonitions and five consent probations at the Inquiry Committee level.

[¶ 17]  The Standards for Imposing Lawyer Sanctions adopted by this Court provide, "Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." N.D. Stds. Imposing Lawyer Sanctions 4.12.

[¶ 18]  Standard 9.1 provides, "After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose." The Hearing Panel found Kellington's prior discipline is an aggravating factor. That prior discipline included consent probation for providing false financial information on her application for admission to the bar and consent probation for failing to adequately supervise a nonlawyer assistant in violation of Rule 5.3–which is one of the rule violations admitted in this matter. The Hearing Panel found mitigating factors of timely good faith efforts to make restitution, full and free disclosure, remorse and participation in the Lawyers Assistance Program through development of an individualized assistance plan.

[¶ 19]  Under our Standards, Kellington is subject to suspension unless aggravating or mitigating circumstances dictate otherwise. Here, the aggravating and mitigating circumstances are offsetting at best. At worst, Kellington's history of discipline with a financial matter and with failure to adequately supervise a nonlawyer assistant suggests the disciplinary sanction should be increased. As a result, I cannot agree that our rules and standards, or the princi-

ples of graduated and proportional discipline allow us to stay Kellington's probation. The offer of discipline by consent therefore should be rejected.

[¶ 20]  DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.