2014 ND 168

**In the Matter of the Application for DISCIPLINARY ACTION AGAINST Theresa L. KELLINGTON, a Member**

of the Bar of the State of North Dakota.

**Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner**

v.

**Theresa L. Kellington, Respondent.**

Nos. 20140080, 20140081.

Supreme Court of North Dakota.

Aug. 28, 2014.

Brent J. Edison, Bismarck, N.D., for petitioner.

Ronald H. McLean (argued) and Ian McLean (on brief), Fargo, N.D., for respondent.

PER CURIAM.

[¶ 1] Theresa Kellington objects to the report of a hearing panel of the Disciplinary Board recommending she be suspended from the practice of law for 60 days and pay the costs of the proceedings. We conclude there is clear and convincing evidence Kellington violated N.D.R. Prof. Conduct 1.5(a), fees, and 5.3(a), supervision of non-lawyer assistants. We order that Kellington be suspended from the practice of law for 30 days and pay $4,965.95 in costs of the disciplinary proceedings.

I

[¶ 2] In *Disciplinary Board v. Kellington,* 2011 ND 241, ¶ 6, 809 N.W.2d 298, we suspended Kellington from the practice of law for ninety days but stayed the suspension and placed her on probation for one year, subject to her having no further meritorious disciplinary complaints during the period of probation.

[¶ 3] In May 2013, the Disciplinary Board filed an amended petition to revoke Kellington's probation and to subject her to additional discipline as a result of a new complaint filed against her. After an evidentiary hearing, the hearing panel made the following findings: In August 2011, Angela Dieterle retained Kellington to represent her in connection with a divorce. Kellington agreed to represent Dieterle on an hourly fee basis at a rate of $150.00 per

hour. Between August 31, 2011, and January 31, 2012, Kellington billed Dieterle approximately $20,000.00. Kellington's billing records reflect duplicative and unnecessary charges for cover letters, charges for overhead items, charges at the wrong hourly rate, and duplicative charges for routine correspondence. Her billing records reflect time entries for herself as well as entries for legal assistants Nicole Wek and Sue Rossow. Wek has a two-year accounting degree, and Rossow has a bachelor's degree in accounting. When hired by Kellington, neither Wek nor Rossow had ever worked as a legal secretary or legal assistant, but Wek had experience working as an assistant to the non-attorney bill collectors at a collection law firm. When Wek and Rossow went to work for Kellington, they did not receive any orientation or training beyond a time-keeping system training. When they worked on Dieterle's file, neither met the guidelines set forth in comment 4 of N.D.R. Prof. Conduct 5.3 for evaluating the education, training, or experience of a qualified legal assistant.

[¶ 4]   The hearing panel concluded Kellington violated provisions of the North Dakota Rules of Professional Conduct involving client fees under Rule 1.5(a) and responsibilities for nonlawyer assistants under Rule 5.3(a), (b), & (c). The panel recommended Kellington be suspended from the practice of law for 60 days and pay costs and expenses of the proceedings in the amount of $4,965.95. The panel's 60–day recommendation combines a new suspension with a suspension for Kellington's violation of her probation imposed for prior misconduct in *Kellington*, 2011 ND 241, 809 N.W.2d 298.

·[¶ 5]   The hearing panel had jurisdiction under N.D.R. Lawyer Discipl. 3.1(E). Kellington did not file timely objections to the hearing panel's report within 20 days under N.D.R. Lawyer Discipl. 3.1(F), and the Board did not file its findings and recommendation within the 60–day requirement of Rule 3.1(F). Kellington has raised this as an issue, but these deficiencies are insufficient to warrant dismissal of the case, because the delay did not affect the fundamental fairness of the disciplinary process. *See also Disciplinary Board v. Overboe*, 2014 ND 62, 844 N.W.2d 851 (a long delay must destroy the fundamental fairness of the entire disciplinary process to warrant dismissal of the disciplinary case). This Court has jurisdiction under N.D. Const. art. VI, § 3, N.D.C.C. § 27–14–01, and N.D.R. Lawyer Discipl. 3.1(F).

## II

[¶ 6]   We review disciplinary proceedings de novo on the record. *Disciplinary Board v. McDonald*, 2000 ND 87, ¶ 13, 609 N.W.2d 418. Each alleged violation must be proved by clear and convincing evidence. *Disciplinary Board v. Lee*, 2013 ND 151, ¶ 9, 835 N.W.2d 836. "We give due weight to the findings, conclusions, and recommendations of the [hearing panel], but we do not act as a 'rubber stamp' for those findings and recommendations." *McDonald*, at ¶ 13. We give deference to the hearing panel's findings on matters of conflicting evidence and credibility of witnesses when the panel has heard the witnesses and observed their demeanor. *Id.*

[¶ 7]   Although this Court has not previously stated the burden of proof necessary to revoke a lawyer's probation, other courts have explained that in disciplinary proceedings involving professional licenses, probation is revoked when allegations are proved by a preponderance of the evidence:

Sandarg correctly points out that the standard of proof to revoke a professional license is clear and convincing evi-

dence. (*Ettinger v. Board of Medical Quality Assurance* (1982) 135 Cal. App.3d 853, 856, 185 Cal.Rptr. 601.) The administrative law judge and the trial court applied that standard with respect to the board's accusation. But that same standard did not apply to the board's petition to revoke Sandarg's probation.

The courts have addressed a similar issue in criminal cases. The standard of proof in a criminal case is, of course, beyond a reasonable doubt. (Pen.Code, § 1096.) However, once a convicted criminal is placed on probation, the government is not required to prove beyond a reasonable doubt that he or she violated the terms of probation in order [to] revoke probation. Rather, the "standard of proof required for revocation of probation is a preponderance of evidence to support the violation." (*People v. Kelly* (2007) 154 Cal.App.4th 961, 965, 66 Cal.Rptr.3d 104.)

The same analysis applies here. While the board is required to prove the allegations in an accusation by clear and convincing evidence, it is only required to prove the allegations in a petition to revoke probation by a preponderance of the evidence.

*Sandarg v. Dental Bd. of California*, 184 Cal.App.4th 1434, 1441, 109 Cal.Rptr.3d 826 (2010).

▆ [¶ 8] We adopt the same standard of proof as established in *Dental Bd. of California*. 184 Cal.App.4th at 1441, 109 Cal.Rptr.3d 826. In order to revoke a lawyer's probation which has been implemented in a prior disciplinary proceeding, the board must prove a violation by a preponderance of the evidence.

### III

#### A

▆ [¶ 9] Kellington argues the hearing panel erred in determining she violated N.D.R. Prof. Conduct 1.5(a), which precludes lawyers from charging an unreasonable fee and provides:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[¶ 10] Kellington claims the panel erred in determining factors one and four of N.D.R. Prof. Conduct 1.5(a) weigh against the reasonableness of the fee, and also erred in ignoring or determining the remaining factors are irrelevant.

[¶ 11] Comment 1 of N.D.R. Prof. Conduct 1.5 provides:

Paragraph (a) requires that lawyers charge fees that are reasonable under the circumstances. The factors specified in (1) through (8) are not exclusive.

Nor will each factor be relevant in each instance. Paragraph (a) also requires that expenses for which the client will be charged be reasonable. . . .

[¶ 12] In support of its conclusion that Kellington charged an unreasonable fee in violation of Rule 1.5(a), N.D.R. Prof. Conduct, the hearing panel found that Dieterle's divorce case was not particularly novel or complex and that Kellington billed approximately $20,000.00 over a five-month period despite knowing Dieterle had come to her as a potential reduced-fee client. The panel also found that Kellington's billing records reflect unreasonable charges including duplicative and unnecessary charges for cover letters, charges for overhead items, charges at the wrong hourly rate, and duplicative charges for routine correspondence.

[¶ 13] Although the panel found Dieterle was a difficult client, under Rule 1.5(a), difficult clients do not equate with difficult legal issues, and the record reflects this divorce case involved issues present in a typical divorce. A difficult client, however, may increase the cost of litigation, as it did in this case, and this is a consideration for what is a reasonable fee under Rule 1.5(a) for reasons set out in the panel's findings.

[¶ 14] However, the billing records provided by Kellington reflect that she double-billed, she billed for overhead items, and she billed at the wrong hourly rate. This facts of this case are similar to *Disciplinary Board v. Delorme*, 2011 ND 40, 795 N.W.2d 293, in which we concluded the attorney violated N.D.R. Prof. Conduct 1.5. In *Delorme*, the attorney, among other things, charged at an hourly rate greater than what was agreed to, failed to reflect a payment by the client, overbilled for mileage, billed over 24 hours on a given day, and billed for time in which the attorney provided no legal services. *Id.* at ¶ 4.

On the basis of clear and convincing evidence, as well as our conclusion in *Delorme*, we adopt the panel's recommendation that Kellington's fee was unreasonable under N.D.R. Prof. Conduct 1.5(a).

**B**

[¶ 15] Kellington argues her fee is reasonable even though it contains minor billing errors because, she claims, a bill containing de minimus billing errors has never resulted in discipline in North Dakota. She also argues she performed a substantial amount of legal work which was not billed and which was substantially greater than the total amount of billing errors. Despite these contentions, Kellington's improper billing previously discussed is sufficient to establish that her fee is unreasonable under N.D.R. Prof. Conduct 1.5(a).

**IV**

[¶ 16] Kellington argues the hearing panel erred in concluding she violated N.D.R. Prof. Conduct 5.3(a), (b), and (c), regarding supervision of non-lawyer assistants.

[¶ 17] Rule 5.3 provides, in relevant part:

With respect to a nonlawyer employed or retained by or associated with a lawyer:

(a) a partner, and a lawyer who individually or together with other lawyers has comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the nonlawyer's conduct is compatible with the professional obligations of the lawyer;

(b) the lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the nonlawyer's conduct is compatible with

the professional obligations of the lawyer; and

(c) a lawyer shall be responsible for conduct of a nonlawyer that would be a violation of these Rules if:

(1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the nonlawyer is employed, or has direct supervisory authority over the nonlawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated, but fails to take reasonable action.

[¶ 18] Nicole Wek and Sue Rossow were legal assistants for Kellington when she was working on Dieterle's case. In finding Kellington failed to properly supervise her assistants, the hearing panel cited the following: Wek's testimony that it was typical for her to bill time for faxing affidavits to clients, e-filing documents, and preparing routine documents such as proofs of service; Wek's testimony that, beyond instructions to not bill for things like filing or organizing the file, Kellington did not provide any instructions as to what tasks should be considered non-billable overhead; Rossow's testimony in which she stated that it was typical for both her and Kellington to bill time for the same transmittal letters to clients, that it was typical for her to bill for transcribing Kellington's dictation, and that it was typical for her to print out Dieterle's emails and mail them to Dieterle with a cover letter that she billed for.

[¶ 19] The evidence demonstrates that Kellington's assistants were instructed not to bill for filing or file organization, but otherwise were not provided any instructions as to what tasks should be considered non-billable. For work other than filing, they recorded their time in the office billing system. The panel found:

As the sole owner of [the firm], and the one with direct supervisory authority over legal assistants, Kellington failed to make reasonable efforts to ensure that her law firm had in effect measures giving reasonable assurance that nonlawyer assistants' conduct was compatible with Kellington's professional obligations.

[¶ 20] The panel concluded Kellington's conduct violated Rule 5.3(a), (b) and (c), N.D.R. Prof. Conduct, finding Kellington failed to properly supervise her assistants, whose billing practices did not comply with the standards of professional conduct.

[¶ 21] We can find no authority supporting a conclusion that either Kellington or the legal assistants did anything ethically improper by recording the legal assistants' time in the office billing system. Rossow testified that after the times were entered, Kellington would go through and review the time entries before the statements were mailed out. The testimony thus demonstrates that Kellington controlled what recorded time would be billed to the client. If the legal assistants recorded their time and Kellington chose to improperly bill for those efforts, that is the Rule 1.5(a) violation discussed above. Therefore, the Rule 5.3 question is not whether Kellington overbilled the legal assistants' time but whether she violated Rule 5.3 for other reasons.

■ [¶ 22] Subsection (a) of Rule 5.3 required Kellington to make "reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the nonlawyer's conduct is compatible with the professional obligations of the lawyer." N.D.R. Prof. Conduct 5.3(a). The rule comment explains:

A lawyer must give such nonlawyers appropriate instruction and supervision

concerning the ethical aspects of their employment, particularly regarding the obligation not to disclose information relating to representation of the client, and is responsible for their work product. The measures employed in supervising nonlawyers should take account of the fact that they do not have legal training and are not subject to professional discipline.

N.D.R. Prof. Conduct 5.3 cmt. 1.

[¶ 23] Rule 5.3(a) focuses on the lawyer's duty to train and supervise nonlawyers. In this case, Kellington did little to train her legal assistants. The evidence shows Kellington's assistants received no orientation or training other than for the timekeeping system and they never attended any classes or seminars except for how to be a notary. We conclude this evidence establishes Kellington violated Rule 5.3(a).

■ [¶ 24] Subsection (b) of Rule 5.3 requires "the lawyer having direct supervisory authority over the nonlawyer [to] make reasonable efforts to ensure that the nonlawyer's conduct is compatible with the professional obligations of the lawyer." Although the panel concluded Kellington violated this subsection of the rule, we can find no evidence establishing that the conduct of Kellington's assistants was incompatible with the professional obligations of a lawyer. Much of the panel's conclusion hinged on the legal assistants' alleged improper billing, and we previously concluded that the billing practices of her legal assistants was not improper. Kellington's legal assistants recorded their time for the work they performed, which itself was not an ethical violation. The record supports a conclusion that her assistants performed work appropriate for nonlawyer assistants, and we conclude there is no evidence supporting a finding that Kellington violated Rule 5.3(b).

[¶ 25] Subsection (c) of Rule 5.3 states that "a lawyer shall be responsible for conduct of a nonlawyer that would be a violation of these Rules...." As stated in our discussion of subsection (b) above, we can find nothing in the record establishing that any of the conduct by Kellington's legal assistants was improper. We therefore conclude that Kellington did not violate subsections (b) and (c) of Rule 5.3.

[¶ 26] The panel also found that when Kellington's assistants worked on Dieterle's file, neither of the assistants met the guidelines set forth in N.D.R. Prof. Conduct 5.3, comment 4, for evaluating the education, training or experience of the legal assistant. Comment 4 of N.D.R. Prof. Conduct 5.3 provides:

The following guidelines have been recognized as helpful in evaluating the education, training or experience of a qualified legal assistant.

1) Graduation from one of the following ABA approved legal assistant/paralegal programs: bachelor's degree, associate's degree, or a post-baccalaureate program. If not ABA approved, graduation from a legal assistant/paralegal program that consists of a minimum of 60 semester credit hours or the equivalent, of which eighteen semester credit hours are substantive legal assistant/paralegal courses.

2) A bachelor's degree in any field, and either one-year employer training as a legal assistant/paralegal or eighteen semester credit hours of legal assistant/paralegal substantive courses.

3) Successful completion of a national certifying examination that is specifically designed for legal assistants/paralegals and which includes

continuing legal education for maintenance of that certification status.

4) Seven years or more of experience working as a legal assistant/paralegal who has been employer trained by and under the supervision of a lawyer.

[¶ 27] The panel found that Wek has a two-year accounting degree and Rossow has a bachelor's degree in accounting. The panel found that when hired by Kellington, neither Wek nor Rossow had ever worked as a legal secretary or legal assistant, but Wek had experience working as an assistant to the non-attorney bill collectors at a collection law firm. The hearing panel also found:

> [T]hey did not receive any orientation or training, beyond the TABS time-keeping system training that Rossow received. They never attended any classes or seminars, except a class for notaries, while working for Kellington. They never received any training as to what items were billable and non-billable to the client. They were not given any policy or procedure manuals, beyond the North Dakota Century Code rules volume.

[¶ 28] With respect to the panel's finding that Kellington's assistants did not meet the guidelines set forth in Rule 5.3, comment 4, Kellington argues the comment is only a suggestion and there is no evidence her assistants were not qualified to be paralegals beyond simply not meeting the helpful guidelines of comment four. Although it is questionable whether a lawyer should be sanctioned for hiring legal assistants who do not meet the guidelines of Rule 5.3, comment 4, we need not address that argument because we have already concluded Kellington violated Rule 5.3(a). Regardless of whether her assistants satisfied the guidelines of Rule 5.3, comment 4, Kellington's failure to properly train her assistants was a violation of Rule 5.3.

## V

[¶ 29] Kellington argues the hearing panel erred in failing to consider mitigating factors which she claims weigh heavily in her favor: she provided disciplinary counsel with all of her billing statements and supporting documentation for every single billing item on the statements; she provided testimony by former clients and other attorneys concerning her reputation as an ethical and competent attorney, as well as testimony that she was contrite over how the matter had played out and "had taken a plethora of steps to ensure such a situation would not happen again"; and she did not have a dishonest motive for billing Dieterle for minor overhead items.

[¶ 30] Rule 9.1, N.D. Stds. Imposing Lawyer Sanctions, provides: "After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose." This rule does not require the hearing panel to consider mitigating factors. It states "mitigating circumstances *may* be considered...." *See Interest of C.J.A.,* 473 N.W.2d 439, 441 (N.D.1991) ("As a general rule of statutory construction, the word 'shall' in a statute creates a mandatory duty...."); *Novak v. Novak,* 74 N.D. 572, 577, 24 N.W.2d 20, 23 (1946) ("The word 'may' as ordinarily used is permissive and not mandatory.... Ordinarily, when used in a statute it is permissive only and operates to confer discretion.").

[¶ 31] With regard to aggravating and mitigating factors, the panel concluded:

> [I]n light of the Standards and Kellington's disciplinary history and probationary status, the most appropriate sanction is a 60–day suspension: 30 days for Kellington's misconduct in [this file], ...

and a lifting of the stay and service of 60–day suspension with 30 days suspended of the 90 day suspension imposed in *Disciplinary Board v. Kellington*, 2011 ND 241 [809 N.W.2d 298].... The suspension in both cases shall run concurrently.

[¶ 32]   This case is not the type of situation presented in *Disciplinary Board v. Hoffman*, 2013 ND 137, 834 N.W.2d 636, in which we ordered the lawyer to simply refund unearned portions of a fee because we concluded, as a matter of first impression, it was not permissible to have nonrefundable fees in criminal cases.   Instead, Kellington's conduct is more like that in *Delorme*, 2011 ND 40, 795 N.W.2d 293, in which we suspended an attorney for 30 days for charging an unreasonable fee.  As in *Delorme*, Kellington charged an unreasonable fee and has a prior disciplinary offense.  *See Disciplinary Board v. Kellington*, 2011 ND 241, ¶ 6, 809 N.W.2d 298 (Kellington was placed on probation subject to the condition that she have no further disciplinary complaints during the period of probation).   Because the facts of this case are similar to those in *Delorme*, we conclude Kellington should receive a comparable 30–day suspension rather than the 60–day suspension recommended by the hearing panel.

[¶ 33]   We additionally note that although the conduct in this case occurred around the time Kellington was placed on probation for her prior misconduct in *Disciplinary Board v. Kellington*, 2011 ND 241, 809 N.W.2d 298, the decision in that case was filed on December 20, 2011, and the record in this case demonstrates that some of Kellington's improper billing occurred after that December 20 filing date. The evidence thus shows Kellington was on notice of her probation at the time of these billing violations, and the timing of the conduct does not prevent this Court from revoking her probation.

## VI

[¶ 34]   We adopt the hearing panel's findings, but suspend Kellington from the practice of law in North Dakota for 30 days instead of 60 days as recommended by the panel.  The suspension combines a new suspension with a suspension for Kellington's violation of her probation imposed for prior misconduct in *Kellington*, 2011 ND 241, 809 N.W.2d 298.  The suspension is effective October 1, 2014.  We also order Kellington to pay the costs of the disciplinary proceeding in the amount of $4,965.95 within sixty days, payable to the Secretary of the Disciplinary Board, Judicial Wing, 1st Floor, 600 East Boulevard Avenue, Bismarck, ND 58505–0530.   Kellington must comply with N.D.R. Lawyer Discipl. 6.3 regarding notice.   Reinstatement is governed by N.D.R. Lawyer Discipl. 4.5.

[¶ 35]   GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, LISA FAIR McEVERS, and CAROL RONNING KAPSNER, JJ., concur.

CROTHERS, Justice, concurring in part and dissenting in part.

[¶ 36]   This case is before the Court on a Petition to Revoke Probation and a Petition for Discipline.  I agree disciplinary counsel met his burden of proving violations of Rules 1.5(a) and 5.3(a), but respectfully disagree with the sanction imposed as a result of the new violation.  I agree Kellington's stay of suspension should be revoked, but respectfully disagree on the length of suspension imposed.

[¶ 37]   Disciplinary counsel alleged violation of Rule 1.5(a), N.D.R. Prof. Conduct, that Kellington charged excessive fees. Kellington admitted that time entries for transcription, faxing and e-filing should not have been billed and were errors amount-

ing to $322.50 or less. She argues many of the transcription charges did not have a corresponding dictation charge so the client was not adversely impacted.

[¶ 38] Rule 1.5(a) specifically prohibits charging excessive fees, and Kellington charged small but inappropriate fees over an extended period in this representation. These admitted violations are sufficient to prove a violation of Rule 1.5(a), although standing alone I do not believe they warrant suspension. Majority opinion at ¶ 34.

[¶ 39] Regarding the remaining allegations that Kellington violated Rule 1.5(a), the majority concludes the findings were "sufficient" to adopt the Hearing Panel's recommendation to discipline Kellington. Majority opinion at ¶ 15. I respectfully disagree that we are reviewing the Hearing Panel's findings for sufficiency. Nor can I agree with the ultimate conclusion that, based on our independent examination, evidence exists for this Court to conclude Kellington has further violated Rule 1.5(a).

[¶ 40] Disciplinary counsel's burden is to prove violations of the Rules of Professional Conduct by clear and convincing evidence. *Disciplinary Board v. Hoffman*, 2013 ND 137, ¶ 5, 834 N.W.2d 636 ("Disciplinary counsel must prove each alleged violation by clear and convincing evidence, which means the trier of fact must be reasonably satisfied with the facts the evidence tends to prove and thus be led to a firm belief or conviction.") (quoting *Disciplinary Board v. Hann*, 2012 ND 160, ¶ 14, 819 N.W.2d 498). Rule 1.5(a) lists eight non-exclusive factors for determining whether a fee was reasonable. N.D.R. Prof. Conduct 1.5(a) ("The factors to be considered in determining the reasonableness of a fee *include*....") (emphasis added); N.D.R. Prof. Conduct 1.5 cmt. 1 ("The factors specified in (1) through (8) are not exclusive."); *see Hilton v. N.D. Educ.*

*Ass'n*, 2002 ND 209, ¶ 12, 655 N.W.2d 60 ("Generally, a definition that uses the word 'means' is exhaustive, while a definition that uses the word 'includes' is partial and non-exclusive.") (citing *North Dakota Legislative Drafting Manual* 95 (2001)); *see also Americana Healthcare v. N.D. Dep't Human Serv.*, 510 N.W.2d 592, 594–95 n. 2 (N.D.1994).

[¶ 41] I have separately addressed Kellington's billing for "overhead items" like preparing proofs of service, e-filing and transcribing documents. That leaves claims that Kellington and her legal assistants engaged in $592.50 of double billings or unnecessary charges for transmittal letters and $345 of duplicative charges for routine correspondence. As part of these findings, the Hearing Panel noted, "Where Kellington's time for 'R & R' of transmittal letters is not separately itemized a time of .2 hours *is assumed*." (Emphasis added.) We are left guessing how much of the alleged $937.50 overcharges were "assumed" by the Hearing Panel and the record is unclear.

[¶ 42] Calling further into question the soundness of evidence supporting the recommendation for discipline, the record shows and the Hearing Panel found much of the extra law office work for which the client was charged was demanded by her. Kellington did substantial additional work at the client's request for which the client was not billed and Kellington was not paid. The Hearing Panel also found and the record shows that the unbilled work was "substantially greater" than what even it called overbillings. The Hearing Panel further found that the client was difficult to deal with at times and that Kellington warned the client that that behavior was increasing legal fees. Specifically, those findings state:

- "The billing records and supporting documentation also demonstrate the

substantial amount of communication Angela required and demonstrate that Angela had Kellington working on issues which did not pertain to her divorce case which also increased legal fees (for example, the billing entries for time spent researching and communicating concerning Angela's son's criminal case)."

- "Billing records also demonstrate the massive amount of communication which was required due to Angela's behavior. Exhibit R–2; Exhibit R–3 (p. 119–335). The November billing records also indicate that Kellington made Angela aware that the substantial amount of communication that was required by the attorneys was causing significant legal fees and that Angela and Shannon needed to find ways to communicate without involving their attorneys. *See* Exhibit R–3, (p. 315)."

- "The billing entries and supporting documentation evidence the substantial amount of pleadings and communication which were needed to meet Angela's demands and expectations. Exhibit R–3. However, the billing records do show that there were charges for faxing, e-filing, and transcription which should not have been charged. Tr. at 103, 118. That said, the evidence presented at the hearing demonstrate that there is a substantial amount of legal work which was performed on behalf of Angela that Angela was never billed which is substantially greater than the total monetary amount of the billing errors. Tr. at 118, 133, 161. The evidence also demonstrates that Kellington performed legal work outside of normal business hours at a rate of only $150, instead of the agreed upon rate of $350. Tr. [at] 114."

- "Angela was a high maintenance type client which appears to have increased legal fees charged at the same time that improper charges were made either through error, duplication, normal overhead costs usually incurred by lawyers being charged when such charges are the normal cost of doing business and lack of attention to detail."

[¶ 43] Taken as a whole (and other than the admitted overbillings), I cannot conclude clear and convincing evidence supports the conclusion Kellington charged an unreasonable fee for any individual charge or in the aggregate. Kellington's billings were not the model of law practice management, but they were not proven to be unreasonable in this litigation.

[¶ 44] The aggregate fee was approximately $20,000. This case involved a very difficult client who made demands that increased legal fees and who engaged in conduct that made the proceeding more difficult to litigate. *See Dieterle v. Dieterle*, 2013 ND 71, ¶ 8, 830 N.W.2d 571 (describing some of the client's actions and misconduct). Kellington's representation included two interim hearings and a proceeding to obtain a domestic violence protection order. This record confirms the client was difficult to deal with and, according to the Hearing Panel, required a "massive amount of communication" from Kellington and her staff.

[¶ 45] Rule 1.5 and its comment make clear that the listed factors are non-exclusive. N.D.R. Prof. Conduct 1.5(a) and cmt. 1. I believe client conduct that results in increased work and increased fees is not only relevant but, in a case like this, may be determinative of whether the resulting attorney's fees were reasonable. We know that for a period of time the client demanded that she be provided with paper copies rather than electronic transmittals. That demand alone required extra work by

both Kellington and her nonlawyer staff. That demand, along with other work the client insisted be performed, was acknowledged by the Hearing Panel to have a value of which was "substantially greater" than the total billing errors. We also know that Kellington performed significant additional work on matters unrelated to the divorce and that Kellington did not charge an agreed $350 per hour rate for after hours legal work. Taken together, this evidence fails to convince me that disciplinary counsel has proven a violation of Rule 1.5(a) for charging an unreasonable total fee beyond the improper charges admitted by Kellington.

[¶ 46] Disciplinary counsel alleged Kellington violated Rule 5.3(a), (b) and (c) by failing to fulfil her responsibility to supervise nonlawyer assistants. I agree with the majority's analysis that violation of Rule 5.3(a) has been proven but that violations of Rules 5.3(b) and (c) have not been proven.

[¶ 47] I also agree we should not impose discipline because Kellington employed legal assistants who arguably failed to meet the guidelines. Majority opinion at ¶¶ 26–28. I would go further, however. A violation of guidelines contained in a comment to a Rule of Professional Conduct does not provide a basis for discipline. *See* N.D.R. Prof. Conduct Scope at 1 ("Comments do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules."). I would so hold.

[¶ 48] In view of my agreement with the majority that Kellington has violated Rules 1.5(a) and 5.3(a) the next step is to determine appropriate discipline. I agree with the majority that we are not guided by *Disciplinary Board v. Hoffman*, 2013 ND 137, 834 N.W.2d 636, so that simple repayment would be adequate. Majority opinion at ¶ 32. But I do not agree with

the majority that Kellington's violation of Rules 1.5(a) and 5.3(a) warrant a 30–day suspension, even considering her disciplinary history. Concepts of proportional discipline suggest either a reprimand or a short suspension running concurrently with revocation of suspension, as discussed below, would be appropriate.

[¶ 49] Determining discipline for the new violations is coupled in this case with whether we revoke Kellington's stayed suspension in an earlier proceeding. Staying imposition of a disciplinary suspension is relatively new in North Dakota. *See Disciplinary Board v. Hardwick*, 2013 ND 250, ¶ 14, 841 N.W.2d 427; *Disciplinary Board v. Summers*, 2012 ND 116, ¶ 14, 817 N.W.2d 363; *Disciplinary Board v. Kellington*, 2011 ND 241, ¶ 6, 809 N.W.2d 298; *Disciplinary Board v. O'Donnell*, 2008 ND 76, ¶ 19, 747 N.W.2d 504. *Cf. In re Dvorak*, 2000 ND 98, 611 N.W.2d 147 (suspension stayed 30 days to seek review by the United States Supreme Court). Other than in *Dvorak*, suspension from the practice of law was stayed during the lawyer's probation. *Hardwick*, at ¶ 14; *Summers*, at ¶ 14, *Kellington*, at ¶ 6; *O'Donnell*, at ¶ 19. For the duration of the stay, the lawyer was required to make regular filings with the Disciplinary Board or was participating in a lawyer's assistance program. *See, e.g., O'Donnell*, at ¶ 19. Kellington's probation was similar, and this proceeding appears to be the first where disciplinary counsel has moved to revoke a stayed suspension. *See* Majority opinion at ¶ 7. I agree with the majority's articulation of disciplinary counsel's burden of proof in this revocation proceeding is proof by a preponderance of the evidence. *Id.*

[¶ 50] Proving a violation of probation by a preponderance of the evidence is easily accomplished here. One condition of probation was that "Kellington must have no further disciplinary complaints during

the period of probation found to be meritorious." *Kellington,* 2011 ND 241, ¶ 6, 809 N.W.2d 298. The majority and I both conclude the evidence establishes by clear and convincing evidence that Kellington had a meritorious disciplinary complaint filed during probation. New violations of the Rules of Professional Conduct, occurring both before and after she was placed on probation in the prior proceeding, have been established by a greater weight of evidence than is required to revoke Kellington's probation. Her probation should be revoked.

[¶ 51] Upon revocation, we must determine the appropriate length of suspension. The majority does not answer this directly; instead suspending Kellington for 30 days in a combination of imposing new discipline and revoking the stayed suspension. I respectfully disagree with the adequacy of that action as it relates to revocation of the stayed suspension. I made plain in the 2011 proceeding that I thought a 90–day suspension was appropriate and that staying the suspension was ill-advised. *See Kellington,* 2011 ND 241, ¶ 19, 809 N.W.2d 298 (Crothers, J., dissenting). I continue to believe principles of graduated and proportional discipline require revocation of the stay and imposition of suspension for the full original 90 days. That is especially true when viewed in the context of this disciplinary proceeding, which is Kellington's eighth since 1996. *See id.* at ¶ 16 (Crothers, J., dissenting).

[¶ 52] Daniel J. Crothers